**Thomas M. CUFFY, Plaintiff,**

v.

**TEXACO REFINING & MARKETING COMPANY, Defendant.**

**Civ. A. No. 84–761 MMS.**

United States District Court,
D. Delaware.

April 7, 1988.

Theopalis K. Gregory, of Gregory & Gregory, Wilmington, Del., for plaintiff.

David A. Jenkins, of Morris, Nichols, Arsht & Tunnell, Wilmington, Del. (Larry V. Utke, Houston, Texas, of counsel), for defendant.

## OPINION

MURRAY M. SCHWARTZ, Chief Judge.

Plaintiff Thomas F. Cuffy sued his employer, Getty Refining & Marketing Co., now Texaco Refining and Marketing Co. ("Texaco")[1] ("the company"), alleging employment discrimination on the basis of his race, color and national origin in violation of 42 U.S.C. § 1981 and Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.* Defendant has filed a motion for partial summary judgment on all claims arising out of plaintiff's alleged violation of company rules and policy on May 4, 1984 while he was on fire watch duty. The Court previously ruled that plaintiff's claims under § 1981 based upon the failure to promote and breach of the EEOC settlement agreement are barred by the statute of limitations. Plaintiff asserts that the three-day suspension he received for his conduct on May 4 violated his right to nondiscriminatory treatment as guaranteed by 42 U.S.C. § 1981 and Title VII, and constituted harassment and retaliation in violation of Section 704(a) of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e–3.

## I. BACKGROUND

Plaintiff, a black male, migrated from Trinidad to the United States in 1968 and since 1969 has worked as a General Service Operator ("GSO") for Texaco at its refinery in Delaware City, Delaware.

Mr. Cuffy applied for a promotion to GSO Supervisor in 1980. When the Company appointed a white employee to that position, one of the supervisors told Mr. Cuffy he was not promoted because he was black. As a result, Mr. Cuffy filed a discrimination charge with the Equal Employment Opportunity Commission ("EEOC") in February 1981 asserting he was denied the promotion because of his race. Instead of proceeding with litigation on that issue, the parties entered into a settlement agreement which provided that Texaco would consider Mr. Cuffy for the next available position as GSO Supervisor. After a vacancy opened in 1981, Texaco denied Mr. Cuffy's application and appointed a white employee. Mr. Cuffy filed another complaint with the EEOC in June 1982 claiming he was denied the promotion because he was black, and in retaliation for his previous EEOC complaint. Following an investigation, on June 26, 1984 the EEOC issued a determination finding Texaco's reasons for failing to promote Mr. Cuffy to be pretextual and reasonable cause to believe plaintiff's charges. Plaintiff's Appendix at 169. After conciliation attempts failed, the EEOC sent Mr. Cuffy a Right to Sue Letter on October 25, 1984.

During the pendency of the EEOC investigation, Texaco reprimanded and suspended Mr. Cuffy for allegedly neglecting his duties while on fire watch duty on May 4, 1984.[2] Defendant seeks partial summary judgment on all claims arising out of this incident.

Plaintiff's alleged fire watch violation occurred during a coker turnaround. During a turnaround the coker unit is shut down so that inspection, cleaning and possible repair may take place. Company safety rules and Occupational Safety and Health Administration ("OSHA") regulations require that a person, commonly called a fire watcher, be stationed outside the unit to maintain contact with the workers inside to insure their safety. All parties, including Mr. Cuffy, agree that, until relieved, a fire watcher should not leave his post while workers are inside the unit.

---

1. Getty is now a subsidiary of Texaco. Plaintiff's original complaint named both companies. Plaintiff's amended complaint lists only Texaco as defendant. The opinion will refer to defendant as Texaco.

2. In its opinion and order of November 12, 1986 plaintiff was allowed to amend his complaint to add claims arising out of the fire watch incident on May 4, 1984.

The company assigns GSO's to temporary fire watch duty for events such as the coker turnaround to which Mr. Cuffy was assigned. At the beginning of the assignment, Texaco gave fire watchers instructions on how to perform their job. All of the GSO's assigned to fire watch duty indicated they received oral, but not written instructions. The written guidelines produced by the company indicate they were originally issued "before 2/20/79" and revised June 5, 1984, just one month following the Cuffy incident.

Normally, on a coker turnaround three fire watchers are assigned to each shift, one on the eleventh floor of the unit, one on the fifteenth floor and a rotating relief person. Other GSO's with experience as fire watchers stated that if they needed to leave their post, they would call on the radio or the sound phone on the deck and ask for the relief person or someone else to come up. If a fire watcher needed to urinate while on duty, he would use the portable toilet on his deck so that he could maintain voice contact with the workers inside the unit. During Texaco's investigation of Mr. Cuffy's discipline, Mr. Wilson, local union president, maintained that it was not unusual for fire watchers to leave their posts for short periods of time to relieve themselves, and that it had been done by fire watchers other than Mr. Cuffy.

In addition, Mr. Cuffy maintained it was common practice for fire watchers to leave before the end of their shift, because the relief shift often came in early. Mr. Williams, a GSO, and Mr. Colatriano, an engineer for an outside contractor at Texaco, stated Mr. Cuffy was the only person they knew who left before his relief arrived. In oral argument, counsel for defendant agreed that fire watchers could leave their post before the end of the shift, provided no one was working in the unit and the person stays on the grounds and in radio contact.

On the date in question, Mr. Cuffy was assigned to the 7 P.M. to 7 A.M. shift on the eleventh floor of the coker unit. On the eleventh floor, there are two large openings about 25–30 feet apart, referred to as holes, one into each of the two silo type structures that compose the coker unit. Mr. Cuffy's responsibility as a fire watcher was to maintain visual and voice contact with the workers in each vessel of the unit, and to assist persons working inside the vessels in case of fire or other emergency. Employees of an outside contractor, Catalytic Construction Company, were working inside the coker units on May 4.

According to Mr. Cuffy sometime after 6:00 A.M., he wanted to leave to use the bathroom. One Catalytic employee was inside the unit and another outside. When Mr. Cuffy was unable to contact a relief person, the Catalytic employees agreed it was alright if he left. He asserts that when he returned, no one was in the unit and someone told Mr. Cuffy they were through. Mr. Cuffy then left.

At 6:43 A.M. Mr. Williams, Mr. Cuffy's replacement, and Mr. Colatriano, a safety engineer for Catalytic, arrived on the eleventh floor where Mr. Cuffy was assigned. Mr. Cuffy was not there. Mr. Williams said there were six or seven men working in one section of the unit, and no one in the other section. Mr. Colatriano is not sure if he saw anyone working in either unit, but recalls someone told him there were people working. Mr. Colatriano reported Mr. Cuffy's absence from his post to Texaco management.

Texaco has an independent contractor who maintains a gate log of all vehicles entering and leaving the plant. Mr. Dunn, Mr. Hazel and Mr. Williams were on the shift that replaced Mr. Cuffy. The log indicates that on May 4, 1984, Mr. Dunn came in at 6:02, and Mr. Williams and Mr. Hazel at 6:09. With Mr. Cuffy on the shift ending at 7:00 A.M. were Mr. Diebold and Mr. Baker, as well as the supervising fire inspector Mr. Wharton. The log indicates their departure times as follows: Mr. Wharton, 6:21; Mr. Baker 6:23; and Mr.

Cuffy 6:32. No time is indicated for Mr. Diebold.[3] Mr. Baker and Mr. Diebold maintained that no work was going on at their fire watch stations at change of shift and they were in the lunchroom, but did not know where Mr. Cuffy was. Mr. Hazel confirmed that Mr. Baker and Mr. Diebold were in the lunchroom, and added that Mr. Cuffy was in the back room. Mr. Baker and Mr. Diebold stated they never left their post without being relieved.

Mr. O'Day, of Texaco's employee relations department, conducted an investigation of the incident and reported the results to Mr. Heagy, manager of employee relations for Texaco's Delaware City plant and EEOC director from June 1980 until 1985. On May 10, 1984, a committee composed of Mr. O'Day, Mr. Heagy, the plant manager, the fire and safety supervisor and the maintenance and construction manager decided that Mr. Cuffy should receive a three-day suspension. Mr. Wharton, who as fire inspector supervised Mr. Cuffy while on fire watch assignment, was not involved in the proceedings or advised of them. If the incident had been reported to him, Mr. Wharton stated he would have noted the incident in the log and monitored the situation, without taking any further action.

Mr. Cuffy filed a grievance appealing the disciplinary action. The union represented him in grievance procedures at the company but declined to represent him at arbitration, based upon inconsistencies it found in Mr. Cuffy's statement and its concern for strict enforcement of safety regulations. Mr. Cuffy proceeded to arbitration on his own, and on February 13, 1985 the arbitrator found in the company's favor, and upheld the discipline.

All Texaco employees mentioned in the above discussion as well as Mr. Colatriano are white, with the exception of Mr. Cuffy. On December 28, 1984 Mr. Cuffy instituted suit in this Court against Texaco alleging discriminatory treatment in violation of 42 U.S.C. § 1981 and Title VII.

## II. ANALYSIS

### A. *Summary Judgment Standard*

Under the standard recently enunciated by the United States Supreme Court,

> Rule 56(c) mandates the entry of summary judgment, ... against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986).

To defeat the motion, the non-moving party must produce evidence of facts material to the lawsuit "such that a reasonable jury could return a verdict" in his favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 248, 106 S.Ct. 2505, 2509, 2510, 91 L.Ed.2d 202 (1986). Inferences from the evidence submitted and doubts concerning the existence of a genuine issue of material fact must be resolved in favor of the non-moving party. *Chipollini v. Spencer Gifts, Inc.*, 814 F.2d 893, 900 (3d Cir.), *cert. dismissed*, —— U.S. ——, 108 S.Ct. 26, 97 L.Ed.2d 815 (1987).

In a claim of discrimination, the court must consider "whether evidence of inconsistencies and implausibilities in the employer's proffered reasons for [discipline] reasonably *could* support an inference that the employer did not act for non-discriminatory reasons, not whether the evidence *necessarily* leads to th[e] conclusion that the employer did act for discriminatory reasons." *Chipollini*, 814 F.2d at 900 (emphasis on original) (citing *Graham v. F.B. Leopold Co.*, 779 F.2d 170, 172–73 (3d Cir. 1985)).

■ Because discrimination is difficult to prove, a plaintiff may rely on circumstantial or direct evidence to establish the claim. *Jackson v. University of Pittsburgh*, 826 F.2d 230, 236 (3d Cir.1987) (citing *United States Postal Service Board of Governors v. Aikens*, 460 U.S. 711, 714 n. 3, 103 S.Ct. 1478, 1481 n. 3, 75 L.Ed.2d 403

---

**3.** At oral argument counsel for defendant proffered that the log recorded only the drivers of vehicles and not any passengers also in the vehicle.

(1983)), *cert. denied,* ——— U.S. ———, 108 S.Ct. 732, 98 L.Ed.2d 680 (1988). A plaintiff's testimony, standing alone, may be sufficient to defeat a motion for summary judgment by the defendant. 826 F.2d at 236. Credibility of this testimony is to be evaluated by the factfinder at trial, and not by the judge on a motion for summary judgment. *Id.* at 235.

Keeping this standard in mind, the Court must consider whether, as the non-moving party, the plaintiff has met his burden on this motion for summary judgment.

B. *Discrimination Claim Under 42 U.S.C. § 1981 and Title VII*

Plaintiff claims that, in disciplining him for leaving his post, Texaco discriminated against him on the basis of his race, color and national origin in violation of 42 U.S.C. § 1981 (1982)[4] and Title VII of the Civil Rights Act, 42 U.S.C. § 2000e–2 (1982).[5]

■ Although procedures under the two statutes differ, if the plaintiff alleges purposeful discrimination, both statutes require proof of the same elements. *Lewis v. University of Pittsburgh,* 725 F.2d 910, 915 n. 5 (3d Cir.1983), *cert. denied,* 469 U.S. 892, 105 S.Ct. 266, 83 L.Ed.2d 202 (1984); *Burris v. Davidson Transfer and Storage Co.,* 520 F.Supp. 935, 939–40 (D.Del.1981), *supplemented by,* 527 F.Supp. 930 (D.Del. 1981).

In *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), the Supreme Court allocated the burdens of persuasion in a Title VII case alleging discrimination.

First the plaintiff has the burden of proving by a preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the employee's rejection. Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.... The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.

*Burdine,* 450 U.S. at 252–53, 101 S.Ct. at 1093.

■ The plaintiff's burden to establish a prima facie case should not be made an onerous one. *Burdine,* 450 U.S. at 253, 101 S.Ct. at 1094. When, as here, the plaintiff alleges discriminatory disciplinary action, he may establish either that no employment rule was violated or that the plaintiff, a member of a protected class, was treated differently from employees not members of the protected class who engaged in comparable acts. *Ardrey v. United Parcel Service,* 615 F.Supp. 1250, 1298 (W.D.N.C.1985), *aff'd,* 798 F.2d 679 (4th Cir.1986), *cert. denied,* ——— U.S. ———, 107 S.Ct. 1575, 94 L.Ed.2d 766 (1987).[6] A plain-

4. Section 1981 provides in relevant part:
   [a]ll persons within the jurisdiction of the United States shall have the same right ... to make and enforce contracts, ... and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens....
   42 U.S.C. § 1981 (1982).

5. 42 U.S.C. § 2000e–2 provides in relevant part:
   (a) It shall be an unlawful employment practice for an employer—
      (1) ... to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of the individual's race, color, ... or national origin....

42 U.S.C. § 2000e–2 (1982).
   Texaco has admitted that it is an employer within the meaning of 42 U.S.C. § 2000e(b). Defendant's Amended Answer at ¶ 3.
   An employer's discriminatory disciplinary action against an employee can form the basis of a claim under 42 U.S.C. § 1981 and Title VII. *See, McDonald v. Sante Fe Trail Transportation Co.,* 427 U.S. 273, 282–83, 96 S.Ct. 2574, 2579–80, 49 L.Ed.2d 493 (1987); *Harris v. Plastics Manufacturing Co.,* 617 F.2d 438 (5th Cir.1980); *Wright v. Allis Chambers,* 496 F.Supp. 349 (N.D. Ala.1980).

6. In *McDonnell,* the Court held that an employee may establish a prima facie case of discriminatory hiring by proving (1) that he belongs to a

tiff may also establish discrimination by showing differential treatment favoring a non-protected employee. *Id.*

◼ On the first prong, Mr. Cuffy bears the burden of establishing a prima facie case of discriminatory discipline. Mr. Cuffy, who is black and a native of Trinidad, is a member of a protected class. Texaco disciplined him for leaving his post as a fire watcher prior to quitting time, and for leaving while workers remained in the coker unit. First, other members of his shift left their posts prior to the 7:00 A.M. quitting time, as indicated by the gate log. They were all white and none were disciplined. Second, a disputed issue of material fact exists as to whether workers were in the coker unit at the time Mr. Cuffy left. Mr. Cuffy states that no one was working. Mr. Williams stated workers were in the unit when he arrived and found Mr. Cuffy had left. Mr. Colatriano filed the complaint with Texaco management, but did not personally see whether anyone was working in the unit. No affidavits by the workers in the coker unit were provided. In addition, union president Wilson told Texaco management it was not unusual for fire watchers to leave their posts while on duty.

Mr. Cuffy has established his prima facie case. On a motion for summary judgment, inferences must be taken in favor of the non-moving party, Mr. Cuffy, and the Court is not to make credibility determinations. *See Jackson*, 826 F.2d at 235. The burden upon the plaintiff of establishing a prima facie case is not a heavy burden. *See Burdine*, 450 U.S. at 253, 101 S.Ct. at 1094. Mr. Cuffy has produced sufficient evidence from which a trier of fact could find that he was treated differently from his white co-workers, or, in fact, committed no violation of company rules.

◼ Moving to the second prong of *McDonnell Douglas*, Texaco must establish sufficient evidence of a non-discriminatory reason for its disciplinary action against Mr. Cuffy. All parties have agreed that fire watchers should not leave their posts unattended. Texaco disciplined Mr. Cuffy following a report by Mr. Colatriano. that Mr. Cuffy left his post unattended while workers were in the unit. In addition, the arbitrator upheld the disciplinary action by Texaco. On this motion for summary judgment, Texaco has met its burden of providing facts from which a jury could find it acted for non-discriminatory reasons.

On the third step of the *McDonnell Douglas* analysis, the plaintiff bears the burden of establishing not that "the discriminatory reason was *the* determinative factor, but only that it was *a* determinative factor" in the adverse action taken by the employer. *Bellissimo v. Westinghouse Electric Corp.*, 764 F.2d 175, 179 n. 1 (3d Cir.1985) (emphasis in original), *cert. denied*, 475 U.S. 1035, 106 S.Ct. 1244, 89 L.Ed.2d 353 (1986).

◼ Mr. Cuffy must establish that the non-discriminatory reasons for discipline were merely pretextual. The gate log introduced into evidence establishes that white employees left the facility prior to the end of the shift, and before Mr. Cuffy left. Mr. Cuffy asserts that no workers were in the coker unit when he left, and therefore no violation of company rules occurred. The other fire watchers on the shift, Mr. Baker and Mr. Diebold, maintain that they were not at their posts but were in the lunchroom at the change of shifts because no work was being done at their assigned positions in the unit. Mr. Hazel, a fire watcher on the replacement shift, confirmed the fact that Baker and Diebold were in the lunchroom and also noted that

protected class; (2) that he applied and was qualified for the job for which the employer was seeking applicants; (3) that plaintiff was rejected for the position; and (4) after rejection the employer continued to seek applicants. 411 U.S. at 802, 93 S.Ct. at 1824. The Court noted that the facts and proof required will necessarily vary in Title VII cases. *Id.* at n. 13.

In a subsequent case, the Supreme Court found that plaintiffs established a prima facie case by alleging that members of one class were disciplined while members of another class were not disciplined for similar activity. *McDonald v. Sante Fe Trail Transportation Co.*, 427 U.S. 273, 282–83, 96 S.Ct. 2574, 2579–80, 49 L.Ed.2d 493 (1976).

Mr. Cuffy was in the back room. Fire watchers may leave their posts if no work is being done, as long as they remain at the facility and in radio contact. These facts support the inference that all three fire watchers left the facility prior to the end of the shift, but only Mr. Cuffy was disciplined and not the white workers. The Court must not evaluate credibility, and Mr. Cuffy's testimony by itself may defeat a motion for summary judgment. *See Jackson,* 826 F.2d at 235–36.

A committee established by the employee relations department ordered that Mr. Cuffy receive a three-day suspension. Mr. Wharton, who as a fire inspector supervised Mr. Cuffy in his fire watch duties, stated he merely would have noted the problem and spoken with Mr. Cuffy. At trial, the fact finder could infer that Mr. Cuffy received the more severe discipline because he was black.

In addition, all fire watchers were given only oral instructions on their duties. The written guidelines were reissued and revised June 5, 1984, just one month after the incident with Mr. Cuffy. This could indicate that procedures for leaving the fire watch post were unclear on May 4, 1984 and when Mr. Cuffy was suspended, but later clarified in the revised instructions. In addition the revision could indicate that Texaco reissued the guidelines to retroactively cover Mr. Cuffy's actions. Only Mr. Cuffy, who is black, was disciplined, and not the other employees, who were white.

Mr. Cuffy has met his burden of production of evidence in response to this motion for summary judgment. He is required only to produce evidence from which a trier of fact could conclude that discrimination was a determinative factor in Texaco's disciplinary action against him. *See Chipollini,* 814 F.2d at 900; *Bellissimo,* 764 F.2d at 179 n. 1. Therefore, defendant's motion

for summary judgment will be denied with respect to plaintiff's discriminatory discipline claim under Title VII and Section 1981 arising out of the fire watch incident on May 4, 1984.

### C. *Retaliation Claim Under Title VII*

Plaintiff has also alleged that the three-day suspension received for the May 4, 1984 incident was in retaliation for the claims he filed with EEOC and in violation of Section 704(a), 42 U.S.C. § 2000e–3 (1982).[7] Section 704(a) forbids employment discrimination because an employee has made a charge under Title VII.[8]

The shifting burdens of proof established by the Supreme Court in *McDonnell Douglas* and *Burdine,* and discussed in the previous section, apply to a claim of retaliatory action in violation of section 704(a). *Miller v. Fairchild Industries, Inc.,* 797 F.2d 727, 730 (9th Cir.1986); *McDaniel v. Temple Independent School District,* 770 F.2d 1340, 1345–46 (5th Cir.1985).

To establish a prima facie case of retaliation under Section 704(a), a plaintiff must prove that: "(1) [h]e engaged in an activity protected under Title VII; (2) [his] employer subjected [him] to adverse employment action; (3) there was a causal link between the protected activity and the employer's action." *Miller,* 797 F.2d at 731. *See also, McDaniel,* 770 F.2d at 1346. The proximity in time between the protected action and the alleged retaliation may establish sufficient causation for the plaintiff's prima facie case. *Miller,* 797 F.2d at 731.

Mr. Cuffy has established a prima facie case of retaliatory discipline. In February 1981 and June 1982, he filed charges with EEOC alleging discriminatory employment practices by Texaco in violation of

7. Plaintiff's amended complaint does not allege a claim under § 1981 for retaliation. If plaintiff had filed a claim under § 1981, the analysis would be the same as for the Title VII claim. *Goldsmith v. E.I. duPont de Nemours & Co.,* 571 F.Supp. 235, 239 n. 4 (D.Del.1983).

8. 42 U.S.C. § 2000e–3(a) reads in relevant part:

It shall be an unlawful employment practice for an employer to discriminate against any of his employees ... because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

Title VII. Texaco subsequently took an adverse action by suspending Mr. Cuffy for three days for alleged violations of company rules while on fire watch duty. Texaco issued the suspension on May 10, 1984 during the pendency of the EEOC investigation of Mr. Cuffy's second charge. The EEOC issued its determination on June 26, 1984, six weeks after the suspension. The proximity in time is sufficient to infer a causal link for the purpose of establishing a prima facie case.

■ Under *McDonnell Douglas–Burdine*, the burden then shifts to the defendant to articulate a non-discriminatory reason for the disciplinary action. *Burdine*, 450 U.S. at 252–53, 101 S.Ct. at 1093. On this motion for summary judgment, Texaco has met the burden by pointing to company rules and regulations Mr. Cuffy allegedly violated by leaving his fire watch post. In addition, an independent arbitrator confirmed the suspension ordered by Texaco.

The ultimate burden of proof on a motion for summary judgment, as well as at trial, remains with the plaintiff. In addition to demonstrating that he was engaged in a protected activity and suffered an adverse employment action, Mr. Cuffy must establish a causal link between the two by "showing that the protected activity was the likely reason for the adverse action." *Goldsmith v. E.I. duPont de Nemours & Co.*, 571 F.Supp. 235, 239 (D.Del.1983) (citing *Cohen v. Fred Meyers, Inc.*, 686 F.2d 793, 796 (9th Cir.1982)).

■ A causal link exists only if, at the time of the adverse action, the employer is aware that the employee had engaged in a protected activity. *Goldsmith*, 571 F.Supp. at 239. *See also, Gordon v. National Railroad Passenger Corp.*, 564 F.Supp. 199, 204 (E.D.Pa.1983). Mr. Heagy, manager of employment relations at Texaco's Delaware City facility, was also Texaco's EEOC director for that facility from June 1980 until 1985. Hence, he was the EEOC director at the time Mr. Cuffy filed both EEOC charges against Texaco, and was necessarily aware of those charges. The person conducting the investigation of Mr. Cuffy's alleged fire watch violations reported his findings to Mr. Heagy. Mr. Heagy was also a member of the committee that decided upon the three-day suspension for Mr. Cuffy. Mr. Heagy, therefore, knew of the charges at the time he participated in the disciplinary decision.

■ Mr. Cuffy's heaviest burden is establishing that the charges he filed against Texaco were the likely reason for his suspension. However, the evidence put forward by Mr. Cuffy to establish his claim of discriminatory discipline also supports his claim of retaliation. None of the other workers who committed possible violations of the safety rules had filed discrimination charges against Texaco. Only Mr. Cuffy received disciplinary sanctions. Mr. Cuffy has met his burden and put forward evidence from which a jury could conclude that Texaco suspended him in retaliation. *See Chipollini*, 814 F.2d at 900. The trier of fact at trial, and not the court on a motion for summary judgment, must determine whether to believe Mr. Cuffy or Texaco. *See Jackson*, 826 F.2d at 235. As noted by the Supreme Court in *Burdine*, the issue of Texaco's motives in disciplining Mr. Cuffy is an "elusive factual question." 450 U.S. at 255 n. 8, 101 S.Ct. at 1094 n. 8. Factual questions such as this are not appropriate for resolution on a motion for summary judgment. *Miller*, 797 F.2d at 733.

The Court will enter an order denying defendant's motion for partial summary judgment with respect to the claims arising out of Mr. Cuffy's alleged violation of fire watch duties on May 4, 1984.