Janice L. PARKER, Plaintiff,

v.

STATE OF DELAWARE DEPARTMENT
OF PUBLIC SAFETY, Defendant.

No. CIV. A. 97–503 MMS.

United States District Court,
D. Delaware.

May 28, 1998.

Jeffrey K. Martin, Wilmington, DE, for Plaintiff.

Rosemary K. Killian, Deputy Attorney General, for Defendant.

## *OPINION*

MURRAY M. SCHWARTZ, Senior District Judge.

### Introduction

On September 4, 1997, Janice Parker ("Parker") filed a complaint against the State of Delaware Department of Public Safety ("the Department" or "DPS") alleging violations of Title VII, 42 U.S.C. § 2000e et seq.[1] and 42 U.S.C. § 1981,[2] as well as violations of state law. The Title VII based counts alleged disparate treatment, a hostile work environment, and retaliation. The § 1981 claim was based on an alleged failure to promote. Parker also alleged physical as well as emotional and economic injuries. The Department filed a motion to dismiss all counts on November 4, 1997 pursuant to Fed.R.Civ.P. 12(b)(1), lack of subject matter jurisdiction, and 12(b)(6), failure to state a claim upon which relief can be granted. In the course of briefing the issues, Parker withdrew her § 1981 claim and her breach of implied conditions of employment state law claim. Parker also amended her state law constructive discharge claim so as to assert a Title VII federal constructive discharge claim. Finally, she withdrew her allegations of physical injuries. The surviving claims subject to the motion to dismiss are the four Title VII claims. This Court has jurisdiction pursuant to 28 U.S.C. § 1331, federal question jurisdiction. For the reasons that follow, the Department's motion to dismiss will be granted in part and denied in part.

### Standard of Review

The purpose of a 12(b)(6) analysis is to determine "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim." *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). In considering a motion to dismiss under Rule 12(b)(6), the court is "required to accept as true all allegations in the complaint and all reasonable inferences that can be drawn from them after construing them in the light most favorable to the non-movant." *Jordan v. Fox*, 20 F.3d 1250, 1261 (1994) (citing *Rocks v. City of Philadelphia*, 868 F.2d 644, 645 (3d Cir.1989)); *D.P. Enters., Inc. v.*

---

1. Title VII states:

 It shall be an unlawful employment practice for an employer ... to discriminate against any individual with respect to the compensation, terms, conditions, or privileges of employment, because of such individual's ... sex ... or to limit, segregate, or classify his employees ... in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's ... sex...[.]
 42 U.S.C. § 2000e.

2. 42 U.S.C. § 1981 provides:

 All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

*Bucks County Community College*, 725 F.2d 943, 944 (3d Cir.1984). Further, in determining whether a claim should be dismissed under Rule 12(b)(6),

> a court looks only to the facts alleged in the complaint and its attachments without reference to other parts of the record. Moreover, a case should not be dismissed for failure to state a claim unless it clearly appears that no relief can be granted under any set of facts that could be proved consistently with the plaintiff's allegations.

*Jordan*, 20 F.3d at 1261 (citing *Hishon v. King & Spalding*, 467 U.S. 69 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984)); *D.P. Enters.*, 725 F.2d at 944). The moving party has the burden of persuasion. *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3rd Cir.1991).

### Statement of Facts

Plaintiff was employed with the Delaware State Police ("DSP") for over eleven years, beginning on March 16, 1984. D.I. 21 at 2, ¶ 4. She was assigned to the Troop 1 traffic division. *Id.* at 2, ¶ 6. In 1989, she filed a complaint with the EEOC. *Id.* at 4, ¶ 7. In 1991, she filed a second EEOC complaint. *Id.* at 8, ¶ 8. The EEOC investigated and determined that discrimination had occurred. *Id.*, ¶ 9.

At some point, plaintiff was placed on administrative leave due to an altercation with a Lt. Doubet. *Id.*, ¶ 11. In order to diffuse the situation, DSP transferred plaintiff to Troop 9; however, on or about July 1, 1995, Lt. Doubet was transferred to the same Troop and placed as plaintiff's supervisor. *Id.*, ¶ 12. This transfer and placement of the lieutenant to Troop 9 was done to harass plaintiff for filing the 1991 complaint. *Id.* at 3, ¶ 13. Around this time, Lt. Doubet made false accusations against plaintiff in retaliation for plaintiff's filing the 1991 complaint. *Id.*, ¶ 14. In response to this situation, plaintiff was given an opportunity to transfer to a troop an hour away from her home but she was not offered a transfer to any of three other troops, all of which were closer. *Id.*, ¶ 15.

Between July 1991 and the fall of 1993, Plaintiff was placed on rotating shifts to punish her for the complaints she had made about sexual discrimination. *Id.*, ¶ 16. These shifts were problematic in that plaintiff could not coordinate day care with them. *Id.* at 10, ¶ 19. She requested a transfer but, upon reassurance from her immediate supervisor that her hours would be altered, she withdrew her request. *Id.* The shift problems persisted, however, so in June 1994 plaintiff requested a transfer to the Special Investigations Forecast Unit located at Troop 9. *Id.*, ¶ 18. The position was given to a less experienced male. *Id.*, ¶ 19. Plaintiff again requested that she not be given rotating shifts but her request was denied. *Id.* at 4, ¶ 20. However, male troopers with child care problems were accommodated. *Id.*, ¶ 21.

On or about July 1995, an opening in the DARE (Drug Abuse Resistance Education) program was listed and, due to related experience and education, plaintiff applied. *Id.*, ¶ 22. An oral board made selections, unlike in previous selection processes, and the head of the board was the same person against whom the 1991 EEOC complaint was filed. *Id.* at ¶ 23. Plaintiff interviewed for the position on August 15, 1995 and was informed prior to August 21, 1995 that she was not selected. D.I. 19 at 1. A less qualified male received the position. D.I. 21 at 4, ¶ 24. Plaintiff had received above standard to outstanding performance evaluations during the entire time she was employed with DSP. *Id.* at 2, ¶ 5. Due to the denial of career advancement and hostile work environment, plaintiff was forced to resign on September 4, 1995. *Id.*, ¶ 26. All position openings for which plaintiff was qualified at the time of her discharge were filled by male officers. *Id.*, ¶ 25. On or about February 2, 1996, plaintiff filed a third charge of discrimination with the EEOC. *Id.*, ¶ 27. The United States Department of Justice issued a right to sue letter and this action followed. *Id.*, ¶ 28.

### Discussion

Defendant makes two primary arguments[3] with respect to the remaining four Title VII

---

**3.** Defendant also argued in its brief that the pre-

1991 events alleged by plaintiff in the original

claims—disparate treatment, hostile work environment, retaliation and constructive discharge. First, defendant asserts plaintiff cannot base her claims on any events that occurred after her 1991 complaint but prior to the relevant statutory period for the 1996 complaint because she cannot effectively assert a continuing violation theory. Second, defendant contends the facts remaining in the statutory period are not sufficient to state a claim under any of plaintiff's four theories of discrimination.

### I. Continuing Violation: Events that occurred after the 1991 complaint was filed but before the statutory period for the February 2, 1996 complaint

Defendant argues the events that occurred after the 1991 EEOC complaint and prior to the statutory period for the February 2, 1996 complaint do not satisfy the standard for a continuing violation. As a result, all such events are time barred. Defendant also argues the assignment of plaintiff to rotating shifts in 1991 should be excluded for two additional reasons.[4] First, the assignment must have been part of the 1991 EEOC complaint and, therefore, should be struck from the instant complaint. Second and alternatively, the assignment occurred subsequent to the filing of the EEOC complaint but clearly should have prompted plaintiff to file a complaint. Therefore, plaintiff failed to exhaust her administrative remedies with respect to this alleged discriminatory act and lost her opportunity to assert it as part of a continuing violation.

Plaintiff responds to the overarching argument by asserting that all the facts alleged as occurring after the 1991 EEOC complaint was filed but before the statutory period underlying the 1996 EEOC complaint satisfy the requirements of a continuing violation

theory. With respect to the specific 1991 shift assignment targeted by defendant, plaintiff asserts it was not part of the 1991 complaint and does legitimately support a continuing violation theory.

The Court will turn first to the specifically identified 1991 event—the assignment of rotating shifts. The amended complaint gives every indication the shift assignment problem occurred after the filing of the 1991 EEOC complaint. The paragraph about the shifts identifies the relevant time period as July 1991 to the fall of 1993. Further, the paragraph about the assignment comes after the paragraph alleging the filing of the 1991 complaint and the paragraph subsequent to the assignment states the request for a transfer from the rotating shifts occurred in January 1993. In addition, plaintiff struck all allegations supporting the 1989 and 1991 EEOC complaints from the amended court complaint and the paragraph about the rotating shifts remained. As a result, the Court finds, for purposes of the motion to dismiss, the assignment to rotating shifts was not part of the 1991 EEOC complaint.

As stated above, defendant also argues the assignment of shifts is excluded because plaintiff failed to exhaust administrative remedies and, therefore, plaintiff cannot use the assignment as part of a continuing violation theory. Regarding the exhaustion of administrative remedies, the relevant section of Title VII states:

> A charge under this section shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred and notice of the charge ... shall be served upon the person against whom such charge is made within ten days thereafter ....

42 U.S.C. § 2000e–5(e)(1).[5] This 180 day statutory period is designed to protect indi-

---

complaint could not serve as the basis for any of plaintiff's claims either because plaintiff failed to exhaust her administrative remedies with respect to those events or because the events are time barred. However, in her answering brief, plaintiff agreed with defendant and then amended her complaint as of right to exclude all facts predating the 1991 complaint, other than the occurrence of the 1989 complaint. Therefore, without expressing any opinion as to this issue, the Court will accept the parties' position and the amended

complaint. The remaining analysis will therefore be based only on the amended complaint.

**4.** Although defendant similarly objected to allegations detailing the actual confrontation with Lt. Doubet, plaintiff subsequently submitted an amended complaint which struck these allegations and mooted defendant's argument.

**5.** Plaintiff asserts the applicable statutory period is 300 days. However, as defendant correctly

viduals' civil rights and at the same time ensure employers will not be burdened by defending claims arising from employment actions that occurred in the distant past. *Delaware State College v. Ricks*, 449 U.S. 250, 256–57, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980). However, in an effort to resolve the tension between this relatively short time span and certain realities of discrimination, an equitable exception to this time bar has evolved. This exception is known as the "continuing violation doctrine" and covers an unlawful employment practice which "manifests itself over time, rather than as a series of discrete acts." *Martin v. Frank*, 788 F.Supp. 821, 825 (D.Del.1992) (quoting *Rochon v. Attorney General of U.S.*, 734 F.Supp. 543, 548 (D.D.C.1990)). The theory allows someone to pursue a claim for discriminatory conduct that transpired prior to the 180 day period if she can demonstrate the act is part of an "ongoing practice or pattern of discrimination ... rather than [an] occurrence of isolated or sporadic acts." *Rush v. Scott Specialty Gases, Inc.*, 113 F.3d 476, 481 (3d Cir.1997) (internal quotations omitted). However, at least one discriminatory act supporting a given cause of action must have occurred within the 180 period. *Rush*, 113 F.3d at 481.

■ When evaluating whether a continuing violation has been established, a court looks to several facts:

The first is subject matter. Do the alleged acts involve the same type of discrimination, tending to connect them in continuing violation? The second is frequency. Are the alleged acts recurring ... or more in the nature of an isolated work assignment or employment decision? The third factor, perhaps of most importance, is degree of permanence. Does the act have the degree of permanence which should trigger an employee's awareness of and duty to assert this [sic] or her rights, or which should indicate to the employee that the continued existence of the adverse consequences of the act is to be expected with-

out being dependent on a continuing intent to discriminate?

*Rush*, 113 F.3d at 481–482 (quoting *Berry v. Board of Supervisors of Louisiana State Univ.*, 715 F.2d 971, 981 (5th Cir.1983)). *See also Sabree v. United Bhd. of Carpenters & Joiners Local No.33*, 921 F.2d 396, 402 (1st Cir.1990) ("A knowing plaintiff has an obligation to file promptly or lose his claim. This can be distinguished from a plaintiff who is unable to appreciate that he is being discriminated against until he has lived through a series of acts and is thereby able to perceive the overall discriminatory pattern"); *Stewart v. CPC International, Inc.* 679 F.2d 117, 120 (7th Cir.1982) (per curiam)(a violation of Title VII occurs and triggers the time limit for filing a charge "when the employee knew or should have known that he or she was discriminated against") (citing *Ricks*, 449 U.S. 250, 101 S.Ct. 498, 66 L.Ed.2d 431)).

■ If a continuing violation is established, the inclusion of the prior events does not substantially change the evidentiary burden on the employer because the prior acts would be relevant as evidence of the timely claim and would therefore have to be addressed anyway. *Sabree*, 921 F.2d at 401–402. If a claim is continuing only because a plaintiff has failed to seek relief, the 180 day bar was intended to apply. *Sabree*, 921 F.2d at 402 (quoting *Roberts v. Gadsden Memorial Hospital*, 850 F.2d 1549, 1550 (11th Cir. 1988)). Because a plaintiff's duty to exhaust administrative remedies is a component of the continuing violation theory analysis, the court will address defendant's arguments regarding the assignment of shifts as part of the larger discussion of plaintiff's continuing violation theory.

■ Defendant asserts plaintiff cannot establish the requisite relationship between the events prior to August 4, 1995 (the beginning of the 180 statutory period) and the events within the statutory period, in order to bring the former into the complaint under the con-

points out, the 300 day statutory limitation is triggered "when a person aggrieved has initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice or to institute criminal proceedings

with respect thereto...." 42 U.S.C. § 2000e–5(e)(1). Plaintiff has not alleged she instituted such proceedings and conceded at oral argument that none was pursued. Therefore, the 180 limitation period applies.

tinuing violation theory.[6] As an initial matter, defendant asserts the allegation that several positions for which plaintiff was qualified were filled by men at the time of discharge is too vague to underpin any of the claims. The Court agrees. Although notice pleading does not require significant detail, plaintiff has not indicated which positions are at issue nor has she alleged she applied for any of the positions or even conveyed her interest in the positions. This degree of ambiguity does not even provide basic notice regarding whatever discriminatory act is being alleged. As a result, this allegation will not be reviewed under the continuing violation standard. The Court will now address each cause of action to determine whether the allegations satisfy the continuing violation theory.

### A. Disparate Treatment Claim

 In order to establish a disparate treatment claim, a plaintiff must offer evidence "adequate to create an inference that an employment decision was based on a discriminatory criterion illegal under the act.'" *EEOC v. Metal Service Co.*, 892 F.2d 341, 348 (3d Cir.1990) (quoting *International Bhd. of Teamsters v. United States*, 431 U.S. 324, 358, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977). Plaintiff's disparate treatment claim is based both on the denial of transfers which were granted to less qualified male troopers and on the lack of work shift accommodations that were made for male troopers.[7] Because the lack of transfer to the DARE program is within the 180 statutory limitation, the only transfer subject to the continuing violation test is the one involving the Special Investigations Forecast Unit.[8]

It is apparent the Forecast transfer is similar to the DARE transfer, both in the type (i.e., disparate treatment) and the form (denial of transfer) of discrimination. Although this transfer is a discrete act, it would alone trigger a duty to file a charge of discrimination only if the plaintiff knew or should have known before the 180 statutory period that the position was filled by a less qualified male. Because this was the first such transfer incident and the Court must take the complaint in a light most favorable to the plaintiff, it must be assumed she did not know of either the qualifications or the gender of the selectee and, therefore, was not on notice she had an obligation to file a charge of discrimination. Consequently, the Special Investigations Unit transfer satisfies the continuing violation theory test.

 The lack of work shift accommodations is dissimilar in form from the denial of a transfer to the DARE program but is arguably the first step in a pattern or practice of disparate treatment in decisions related to position and shift assignments. Similar to the denials of a job transfer, if plaintiff knew at the time of the shift that she was being treated differently than male troopers with similar work shift problems, she had a clear disparate treatment claim and had a duty to file a charge of discrimination. However, the complaint does not indicate whether plaintiff knew or should have known of the disparity in shift assignment accommodations being made at the time. Because the Court must take the facts and reasonable inferences in a light most favorable to the plaintiff, the Court must infer at this procedural juncture that she did not know of the disparity at the time. Therefore, the lack of work shift accommodations survives the continuing violation test.

---

**6.** Defendant argued in its briefs that the DARE transfer, which the complaint placed on or about July, did not fall within the 180 statutory period. Since oral argument, however, the parties have stipulated the DARE transfer interview and rejection occurred during the third week of August, which is clearly within the statutory period.

**7.** Although the cause of action portion of the amended complaint still states that a discriminatory performance evaluation is part of the disparate treatment claim, the allegation that the performance evaluation occurred was struck from the factual portion of the amended complaint.

*See supra* n. 3. As a result, the Court will consider the plaintiff's failure to remove it from the cause of action section as an oversight and will not consider the evaluation as part of this claim.

**8.** Defendant argues an additional transfer request for the Financial Crimes Squad that was later withdrawn cannot serve as a basis for a disparate treatment claim. The Court agrees and plaintiff does not appear to assert this transfer request as evidence of the disparate treatment claim; therefore, the Court will not consider it.

### B. *Hostile Work Environment and Constructive Discharge Claims*

■ To establish a hostile work environment, plaintiff must prove: 1) She suffered intentional discrimination because of her sex; 2) the discrimination was pervasive and regular; 3) the discrimination detrimentally affected her; 4) the discrimination would detrimentally affect a reasonable person; and 5) the existence of respondeat superior liability. *Andrews v. City of Philadelphia,* 895 F.2d 1469, 1472 (3d Cir.1990). Although the Third Circuit Court of Appeals has declined "to adopt a *per se* rule that a properly alleged hostile work environment claim also constitutes a continuing violation," the appellate court has noted there is a "natural affinity" between the two theories because both of them "have similar requirements of frequency and pervasiveness." *West v. Philadelphia Elec. Co.,* 45 F.3d 744, 755 (3d Cir.1995).

Plaintiff alleges her hostile work environment consisted of the assignment of a hostile superior, false accusations about plaintiff by the same person, a series of undesirable troop and shift assignments, and two denials of transfers. The only act which occurred with the statutory period of 180 days was the denial of the DARE transfer.

Plaintiff has taken the unusual approach of claiming a hostile work environment based largely on examples of disparate treatment. Such a basis for a hostile work environment claim is unique because, in most cases, a plaintiff who suffers from disparate treatment will either assert a disparate treatment claim or, due to the 180 statutory limitation period, lose her opportunity to do so. In this case, the complaint does not indicate when plaintiff learned that similarly situated men were treated more favorably with respect to the transfers and the troop and shift assignments. As a result, the Court cannot say at this stage of the proceedings that the prior examples of disparate treatment should have triggered a duty to file and, therefore, should be excluded for failure to file within the statutory period. Nevertheless, the dangers of allowing standard disparate treatment claims to be converted into a contemporaneous hostile work environment claim are apparent. Such an action would significantly blur the distinctions between both the elements that underpin each cause of action and the kinds of harm each cause of action was designed to address.

The United States Supreme Court taught in the seminal case on hostile work environment claims, *Meritor Savings Bank v. Vinson,* 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986), that such claims are grounded in sexual harassment. *Id.* at 64–65, 106 S.Ct. 2399. Such harassment may take the form of " 'unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature.' " *Id.* at 65, 106 S.Ct. 2399 (quoting 29 C.F.R. § 1604.11(a)). When not in the form of an economic quid pro quo, sexual harassment has the " 'purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment.' " 477 U.S. at 65, 106 S.Ct. 2399 (quoting 29 C.F.R. § 1604.11(a)(3)). As the Supreme Court discussed, hostile work environment claims provide a means of redress under Title VII for discrimination that does not take the more traditional form of a tangible or economic loss but rather for discrimination that contaminates the psychological aspects of the workplace to the degree that the conditions of the workplace are altered. 477 U.S. at 64–67, 106 S.Ct. 2399.

Although the assignment of a hostile supervisor and false accusations by that supervisor could be classified as the kind of "discriminatory intimidation, ridicule and insult" addressed by a hostile work environment claim, 477 U.S. at 65, 106 S.Ct. 2399, the more favorable treatment of men with respect to troop and shift assignments and transfer opportunities could not. *See* MATTHEW BENDER, EMPLOYMENT DISCRIMINATION, §§ 46.01–46.03 (2d ed.1995) (discussing acts that constitute sexual harassment). Instead, these latter forms of discrimination present basic disparate treatment scenarios, that is, the kind of tangible or economic losses that the *Vinson* Court contrasted with a hostile environment. Such disparate treatment consists of employment policies or employment decisions involving, for example, hiring, firing, benefits, promotions and compensation.

See Barbara Lindemann & Paul Grossman, Employment Discrimination Law, Chpt. 2 (3d ed.1997) (discussing acts that constitute disparate treatment).

 Because the Court concludes plaintiff cannot base her hostile work environment claim on the gender-based employment decisions that underpin her disparate treatment claim, plaintiff's hostile work environment claim is based on two isolated incidents that occurred prior to the statutory period and no incidents within the 180 day period. As a result, plaintiff's hostile work environment claim must fail at this stage of the analysis.

 Both parties recognize that the constructive discharge claim is dependent upon the hostile work environment claim. A constructive discharge claim requires the establishment of a hostile work environment followed by proof that the conditions created by the hostile work environment were so intolerable a reasonable person subject to them would resign. *Goss v. Exxon Office Systems,* 747 F.2d 885, 887–888 (3d Cir.1984). Given the Court's ruling above, plaintiff's constructive discharge claim must fail as well.

### C. Retaliation

 When pursuing a claim of retaliation under Title VII, plaintiff must prove she: 1) engaged in an activity protected by that statute; 2) the State Police took an adverse employment action against her; and 3) there was a causal connection between the participation in the protected activity and the adverse employment action. *Nelson v. Upsala College,* 51 F.3d 383, 386 (3d Cir.1995). Plaintiff's retaliation claim is based on two denials of a transfer as well as on the assignment of a hostile superior. Assuming without deciding these acts are sufficient to state a claim for retaliation, the Court nevertheless finds the Special Investigations transfer and the hostile supervisor do not satisfy the continuing violations theory. Although a reasonable person may not have realized the assignment of hostile supervisor was done in retaliation for the 1991 EEOC complaint, the fact that plaintiff had filed a previous complaint demonstrates she was sensitive to discriminatory acts against her and at least

should have realized the transfer denial was a retaliatory act. *See Martin,* 788 F.Supp. at 826 (holding that by initiating and pursuing prior EEOC charges, plaintiffs were "demonstrably aware of discriminatory acts against them"). At the time of the transfer denial, the plaintiff should have attributed the previous hostile supervisor assignment to the same motive.

 Unlike a hostile work environment claim, which would lead a plaintiff to wait until she could establish a regular and pervasive discriminatory environment, or a disparate treatment claim, which requires knowledge of the preferential treatment of a male, the retaliation claim merely requires knowledge of the protected activity and the adverse action. Plaintiff clearly knew or should have known she engaged in a protected activity when she filed the former complaints. In addition, it is unreasonable to think plaintiff did not consider these actions adverse and potentially retaliatory at the time they occurred. These were discrete acts which, either independently or together, triggered a duty to charge the defendant with discriminatory retaliation. As result, these events cannot buttress plaintiff's retaliation claim, leaving only the DARE transfer as a basis for this claim.

## II. Failure to state claim

### A. Disparate Treatment

Plaintiff alleges both denials of a transfer and the lack of reasonable accommodations of work shift problems demonstrate disparate treatment. The Court will address each of these arguments in turn.

### 1. Denials of a transfer

 One of the ways for a plaintiff to establish a prima facie case of disparate treatment is to prove she belongs to a protected class, applied for and was qualified for an employment position, was denied the position, and someone outside of the protected class was awarded the position. *McDonnell Douglas v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). A plaintiff who meets this burden raises an inference of un-

lawful discrimination. *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). Despite defendant's assertions to the contrary, discriminatory transfers may constitute the kind of adverse employment action that satisfies the disparate treatment prima facie case. *Thomas v. Runyon*, 108 F.3d 957, 958–959 (8th Cir.1997) (transfer of African–American to different department and then to a different shift within the same department); *Huguley v. General Motors Corporation*, 35 F.3d 1052, 1055–1056 (6th Cir.1994) (whites were transferred out of an undesirable location while African–Americans were not); *Bruno v. W.B. Saunders Co.*, 882 F.2d 760, 762 (3d Cir.1989), *cert. denied*, 493 U.S. 1062, 110 S.Ct. 880, 107 L.Ed.2d 962 (1990) (denial of an application for a less prestigious position within a different department of the same company); *Grigsby v. Reynolds Metals Co.*, 821 F.2d 590, 596 (11th Cir.1987) (transfer to different job in different department with no reduction in salary but lower grade and denial of application for another job ·in same department).

▇▇▇▇▇ Although some transfers may not be considered adverse, *see, e.g.,Williams v. Bristol–Myers Squibb Co.*, 85 F.3d 270, 274 (7th Cir.1996) (holding that purely lateral transfer imposed upon a plaintiff cannot rise to an adverse employment action to satisfy a disparate treatment or retaliation based claim), the denial of a sought after transfer is an adverse action. *Bruno*, 882 F.2d at 762. This is unsurprising, since Title VII protects against discrimination in hiring, and applying for a job in another division is similar to applying for the same position from outside of the company.[9] Further, the denial of a transfer could be characterized as the denial of an employment opportunity[10] depending on the nature of the DARE position and the associated job opportunities. As a result, defendant's denial of plaintiff's requested transfer to the Special Investigations Forecast Unit and defendant's rejection of plaintiff's application for the DARE program combined with the subsequent selection of male troopers for the same positions state a claim of disparate treatment under Title VII.

### 2. *Work shift assignments*

▇▇▇ Although the above discussion reflects one of the more traditional disparate treatment cases, the basic McDonnell Douglas framework was not intended to be a rigid framework; rather, the Court recognized the plaintiff's prima facie case would vary with the circumstances. *McDonnell Douglas*, 411 U.S. at 802 n. 13, 93 S.Ct. 1817; *Burdine*, 450 U.S. at 253 n. 5, 101 S.Ct. 1089. As a result, " '[t]he importance of *McDonnell Douglas* lies, not in its specification of the discrete elements of proof there required, but in its recognition of the general principle that any

---

**9.** The Court agrees with plaintiff that the transfer cases cited by defendant are inapposite. In *Flaherty v. Gas Research Institute*, 31 F.3d 451 (7th Cir.1994), the Court held that a lateral transfer offered to an employee as an alternative to being eliminated during a reduction in force was not an adverse employment action. *Id.* at 457. The transfer was a lateral move with the same salary, benefits, and responsibilities, as well as greater growth potential. *Id.* at 457. The Court emphasized that a transfer may be adverse even with the same salary and benefits, such as when the employee is moved to an undesirable location or office, has unique restrictions placed on her, or is given fewer or less important responsibilities. *Id.* However, the *Flaherty* court rejected the plaintiff's argument that a less senior supervisor and a change in title were sufficiently adverse to satisfy the prima facie case. *Id.* Similarly, in *Vogel v. Honeywell*, 1989 WL 48074, *1, *4 (E.D.Pa.1989), the plaintiff was forced out of his position and offered another position with the same salary, benefits, salary grade and many of the same responsibilities. The court considered

the case one of alleged constructive discharge. *Id.* at *4.

Defendant's attempt to contrast the instant case with *Goss* is equally inappropriate. In *Goss*, the plaintiff had been involuntarily transferred out of a lucrative sales territory and into a much less lucrative territory. *Id.* at 888.

Unlike the plaintiffs in the *Flaherty, Vogel* and *Goss* cases, Parker is not claiming a transfer that was offered or imposed is adverse (i.e., that the transfer was equatable to a demotion or other employment loss); rather, she applied for a transfer and was denied it, which is more like a hiring or employment opportunities case. Whether the new position is equivalent to or better than her current job is irrelevant to whether she was qualified for, applied for, and was rejected from the position while a less qualified male was selected. The fact that she was denied a position she applied for is adverse in and of itself.

**10.** *See supra* n. 1.

Title VII plaintiff must carry the initial burden of offering evidence adequate to create an inference that an employment decision was based on a discriminatory criterion illegal under the act.'" *Metal Service Co.*, 892 F.2d at 348 (quoting *International Bhd. of Teamsters*, 431 U.S. at 358, 97 S.Ct. 1843). The Third Circuit Court of Appeals has cautioned that

> courts must be sensitive to the myriad of ways such an inference can be created. Simply stated a Title VII plaintiff has established a prima facie case when sufficient evidence is offered such that the court can infer that if the employer's actions remain unexplained, it is more likely than not that such actions were based on impermissible reasons.

*Metal Service Co.*, 892 F.2d at 348 (citations omitted). This flexibility is particularly necessary for cases that are based not on hiring and firing but rather on the terms, conditions, and privileges of employment, which clearly do not fit comfortably into the McDonnell Douglas framework. Plaintiff's claim regarding the assignment of shifts presents such a case.

 According to plaintiff, rotating shifts present greater problems than non-rotating shifts for people with child care needs. In light of this fact, plaintiff indicated twice to her superiors she needed to be removed from rotating shifts in order to accommodate such demands. The first time she withdrew her transfer request based on assurance by a supervisor that her needs would be accommodated. When she remained assigned to such shifts, she again requested a different assignment but her request was denied. However, similar changes were made for male troopers. Assuming these allegations to be true, plaintiff has stated a prima facie case of sex discrimination.

In *Healey v. Southwood Psychiatric Hospital*, 78 F.3d 128 (3d Cir.1996), a female plaintiff filed suit alleging her gender was the basis on which the hospital made a decision to assign her to the night shift. *Id.* at 130. Recognizing the assignment of staff to

shifts based on gender implicates Title VII, the court nevertheless upheld the practice as justified because of the gender-related psychological needs of some of the patients. *Id.* at 131–134. *See also Tharp v. Iowa Department of Corrections*, 68 F.3d 223, 226 (8th Cir.1995) (holding that shift assignments are a privilege of employment and, if carried out discriminatorily, implicate Title VII). Similar to *Healey*, plaintiff alleges discriminatory assignment of shifts. Plaintiff has raised the necessary inference of discrimination under Title VII to state a claim.

### B. *Retaliation*

 As stated above, a retaliation claim is based on a showing that a defendant engaged in an adverse employment action against a plaintiff in response to the plaintiff's exercise of a protected activity. *Nelson*, 51 F.3d at 386.[11] "Adverse employment action" is the operationalization of the principle that retaliatory conduct, when not involving discharge or refusal to hire, must still be serious enough to alter the employee's compensation, terms, conditions, or privileges of employment; to deprive the employee of employment opportunities; or to adversely affect the employee's status as an employee, according to the language of Title VII. *Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1300–1303 (3d Cir.997) (holding that "unsubstantiated oral reprimands" and "unnecessary derogatory comments" do not rise to the level of adverse employment actions). Defendant concedes the filing of an EEOC complaint is a protected act. *Robinson*, 120 F.3d at 1300; *Hampton v. Borough of Tinton Falls Police Department*, 98 F.3d 107, 116 (3d Cir.1996); *Sauers v. Salt Lake County*, 1 F.3d 1122, 1128 (10th Cir.1993). As the only arguably adverse action remaining after the continuing violation discussion is the denial of the DARE transfer, the Court will restrict its analysis to this act.

 Defendant argues the denial of a transfer is not an adverse act and that, even if it were, no causal connection has been

---

**11.** Title VII states that "[i]t shall be an unlawful employment practice for n employer to discriminate" against an employee "because he has made a charge" of discrimination. 42 U.S.C. § 2000e–3.

established. The Third Circuit Court of Appeals has held, along with other circuits, that a transfer can satisfy the "adverse action" element of a retaliation claim. *Randlett v. Shalala*, 118 F.3d 857, 862 (1st Cir.1997) (denial of a requested transfer); *Hampton*, 98 F.3d at 116 (undesirable transfer imposed); *Sauers*, 1 F.3d at 1128 (transfer against the employee's wishes); *Bouman v. Block*, 940 F.2d 1211, 1229 (9th Cir.1991) (denial of a requested transfer).[12] As is true with respect to the disparate treatment claim, some transfers may not constitute adverse action sufficient to. qualify as retaliation. *See, e.g., Williams*, 85 F.3d at 274 (stating that imposing a purely lateral transfer in form and substance cannot rise to an adverse employment action to satisfy a disparate treatment or retaliation based claim). However, the denial of a position for which the plaintiff applied is .an adverse action, whether it is considered a hiring issue or a job opportunities issue. *See Bouman*, 940 F.2d at 1229 ("Bouman need not show that she was fired, demoted or suffered some financial loss as a result. The fact that the position was not made available to her because of her involvement in protected activities is sufficient."). *Cf. Sauers*, 1 F.3d at 1128 (transfer against employee's wishes stated prima facie case of adverse action without proof of more); *Hampton*, 98 F.3d at 116 ("Although the rotation may not be a demotion, it came on the heels of his EEOC filing, and plaintiffs argue that the road patrol assignment is less desirable than that of detective bureau.").

The only remaining issue related to plaintiff's ability to state a retaliation claim is the causal relationship between the filing of the 1991 complaint and the 1995 denial of a transfer. The allegations state the transfer was given to a less qualified male, which raises a reasonable inference the decision was motivated by hostility towards the plaintiff. Although ̀one could argue the hostility was based directly on her gender rather than on the 1991 complaint, either inference is reasonable. Defendant contends the four year delay of such action argues against the latter interpretation; however, the delay does not nullify the inference of discriminatory motive of some kind.[13] Upon a motion to dismiss, it is not for the Court to decide which discriminatory motive is more likely or whether the causal link has actually been established by a preponderance of the evidence. The plaintiff has stated a claim for retaliation.

### Conclusion

Except for plaintiff's nebulous allegation that positions for which she was qualified were given to males, all allegations satisfy the notice pleading requirement and survive the continuing violation analysis for at least one cause of action. Plaintiff has stated a

**12.** Defendant largely bases its transfer argument on *Patterson v. McLean Credit Union*, 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989). Patterson's rulings were based on the unique language of § 1981, not Title VII. In addition, a component of the 1991 Civil Rights Act, 42 U.S.C. § 1981(b), amended § 1981 in response to *Patterson* in order to abrogate significantly the part of *Patterson* on which defendant relies.

**13.** This Court held in *Cuffy v. Texaco Ref. & Mktg. Co.*, 684 F.Supp. 87, 95 (D.Del.1988), that a two year delay between the filing of a complaint and the disciplinary action, while placing a heavy burden of causality on the plaintiff, did not negate the inference of retaliation. The Court denied summary judgment for the defendant. *Id.* Although a four year delay may be even more of an obstacle for Parker, the defendant does not cite any authority for the proposition that the delay automatically precludes the establishment of causality, without regard for other factors. The Third Circuit Court of Appeals has held that although temporal proximity is a significant factor in establishing causality, temporal remoteness, especially when intervening acts of hostility are alleged, is not necessarily determinative. *SeeRobinson v. S.E. PA. Transp. Authority, Red Arrow*, 982 F.2d 892, 894–896 (3d Cir.1993) (stating that the "mere passage of time is not legally conclusive proof against retaliation"); *San Filippo v. Bongiovanni*, 30 F.3d 424, 443–445 (3d Cir.1994) (same); *see also Coates v. Dalton*, 927 F.Supp. 169, 170–171 (E.D.Pa.1996) (deny motion for judgment notwithstanding the verdict, holding that a four-year time delay is not legally conclusive proof of no retaliation, and stating that a contrary holding would allow employers to avoid liability merely by waiting the requisite amount of time). *But see Lee–Patterson v. New Jersey Transit Bus Operations*, 957 F.Supp. 1391, 1401–1402 (D.N.J.1997) (granting summary judgment for the defendant and holding that a four to five year delay, absent any evidence of causality other than knowledge of protected activity, was insufficient to establish causality as a matter of law).

claim for disparate treatment and retaliation but has failed to state a claim for a hostile work environment or constructive discharge. Defendant's motion to dismiss will be granted in part and denied in part.