

1995 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-24-1995

# Nelson v Upsala College

Precedential or Non-Precedential:

Docket 94-5453

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1995

## Recommended Citation

"Nelson v Upsala College" (1995). *1995 Decisions.* Paper 81.
http://digitalcommons.law.villanova.edu/thirdcircuit_1995/81

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1995 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT


No. 94-5453


JOHNETTA NELSON,

Appellant

v.

UPSALA COLLEGE;
ROBERT E. KARSTEN;
GEORGE W. FREYBERGER;
WARREN H. FUNK


On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil No. 92-1851)


Argued February 14, 1995

BEFORE:  STAPLETON, GREENBERG, and COWEN, Circuit Judges

(Filed:  March 24,  1995)


Charles A. Sullivan (argued)
One Newark Center
Newark, N.J. 07102
Mark P. Denbeaux
3 Werimus Road
Woodcliff Lake, N.J. 07675

Attorneys for Appellant

Nicholas J. Taldone
Peter O. Hughes (argued)
Shanley & Fisher
131 Madison Avenue
Morristown, N.J. 07962-1979

Attorneys for Appellees

OPINION OF THE COURT

GREENBERG, <u>Circuit</u> <u>Judge</u>.

## I.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Johnetta Nelson appeals from the district court's order
of June 24, 1994, granting summary judgment to Upsala College and
certain of its officials in this action alleging unlawful
employment retaliation pursuant to section 704(a) of Title VII of
the Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 2000e-3(a),
and state-law defamation.  In addition, Nelson challenges the
district court's refusal to exercise supplemental jurisdiction
over her claims that Upsala and its representatives engaged in
conduct constituting unlawful employment retaliation contrary to
the New Jersey Law Against Discrimination, N.J. Stat. Ann. §
10:5-12(d) (West Supp. 1994), and the New Jersey Conscientious
Employee Protection Act, <u>id</u>. § 34:19-3(c) (West Supp. 1994).

The germane facts are not in dispute.[1]  Upsala is a
small, private liberal arts college with a campus in East Orange,
New Jersey.  Defendants Robert E. Karsten, Warren H. Funk, and
George W. Freyberger are, respectively, the president, provost,
and dean of students of Upsala.  As a matter of convenience we

_____

[1].  We largely take the facts from the district court opinion.
<u>Nelson v. Upsala College</u>, No. 92-1851 (D.N.J. June 24, 1994).

usually will refer to the college and the individual defendants collectively as Upsala.

Upsala first employed Nelson, an African-American, in 1979 as its part-time Gospel Choir Director. In addition, Upsala has employed Nelson as a secretary in the Office of Dean of Students and the College Center Office. At the beginning of the 1990-1991 academic year, Upsala announced its intention to eliminate the position of choir director for budgetary reasons. When the choir's student participants objected, Upsala decided to fund the choir, but to convert it to an elective course for which students could receive academic credit. This conversion meant that Upsala could not retain Nelson as the choir director because she did not possess a college degree, as required under Upsala's policy for faculty members teaching an accredited course. Consequently, Upsala terminated Nelson's employment as of October 16, 1990.

Nelson then filed a discrimination charge with the Equal Employment Opportunity Commission ("EEOC") against Upsala alleging race discrimination. Nelson and Upsala settled that claim, and on or about November 9, 1990, Upsala agreed to reinstate Nelson to a terminal contract for the 1990-91 academic year. The EEOC then dismissed Nelson's claim.

In accordance with the settlement agreement, Upsala designated Nelson as director of the "extra-curricular designated" Gospel Choir, and she continued in that position until her terminal contract expired on May 3, 1991. During the spring of 1991 a search committee chose Beverly Owens, an

African-American with both a bachelor degree and master of arts degree in music performance, as the new choir director. Upsala planned that the choir would become a course for credit during the 1991-1992 academic year.

Following the expiration of Nelson's terminal contract a number of incidents led to this action. On or about September 18, 1991, Nelson attended a gathering on the Upsala campus. Freyberger was at the meeting and saw Nelson. However, neither Freyberger nor anyone else asked Nelson to leave the campus or forcibly removed her.

Nevertheless by letter dated September 19, 1991, Funk wrote to Nelson stating that she was no longer permitted on campus due to her termination as an Upsala College employee.[2]

---

[2]. The letter stated:

> Please understand that Upsala College has a properly constituted Gospel Choir under the direction of a newly appointed adjunct faculty member.
>
> No other singing groups concentrating upon gospel music have been, or will be, authorized. Your presence, last evening, in Christ Chapel constituted a trespass of College property.
>
> The meeting, consisting at least of Upsala students, was clearly for religious and musical purposes, and, whether or not it might have been called a rehearsal, or a gospel choir, was the equivalent of a gospel choir rehearsal. The result was that the meeting constituted an unauthorized rehearsal of an unauthorized group conducted by an unauthorized trespasser.
>
> Under the terms and conditions of your separation agreement from last year, you have

Freyberger also wrote Nelson that she was no longer permitted on campus and that it would be necessary for her to obtain prior approval from Upsala before entering its campus.

Despite the letters, Nelson visited the Upsala campus a number of times after September 1991. For instance, in October of 1991, Nelson accompanied Gospel Choir members and other students in a protest against the Upsala administration over several issues, including her termination as choir director. Nelson also appeared on campus without authorization in February 1992 to lead the "Former Upsala College Gospel Choir" in a "Gospel Sing Fest." Funk attended this event and saw Nelson. Upsala, however, did not remove Nelson from the campus or take

(..continued)

> agreed to 'do everything within (your) power to effect the spirit and intent of this agreement.' This included your renunciation of all future employment, and it remains the intention of the college that you not be involved here in any way.
>
> You have also agreed that you 'will not at any time disparage Upsala . . . or (its) officers.'
>
> Under no circumstances are you to return to the campus except by my explicit invitation.
>
> The security force has been instructed to remove you should you appear again.

Appellees' app. at 19ABa. Funk wrote this letter after discussing Nelson's appearance with Karsten and Freyberger. According to Funk, he wrote the letter because he viewed Nelson's actions as a deliberate attempt to interfere with Beverly Owens' direction of the choir and as a breach of the settlement agreement.

other actions against her when she appeared on campus after her termination.

On September 27, 1991, Nelson filed a second discrimination charge with the EEOC alleging that Upsala retaliated against her for filing the earlier charge with the EEOC. The EEOC dismissed the second charge on February 14, 1992. Nelson then filed a complaint in the district court alleging that Upsala engaged in conduct constituting unlawful retaliation under section 704(a) of Title VII, the New Jersey Law Against Discrimination, and the New Jersey Conscientious Employee Protection Act. Furthermore, Nelson asserted a state-law cause of action for defamation alleging that during Nelson's last year of employment at Upsala Freyberger told a student or students that Nelson stole money from Upsala and defrauded it by submitting a false petty cash voucher. After Nelson filed the district court complaint, Freyberger made a similar statement to his secretary and members of his professional staff. By stipulation Nelson in effect amended her complaint to add a defamation claim predicated on this republication. Nelson also asserted a state-law claim that the alleged retaliatory conduct constituted a material breach of the settlement agreement by Upsala.

Upsala ultimately moved for summary judgment. On June 24, 1994, the district court granted this motion on the claims of defamation and unlawful employment retaliation under Title VII. The court, however, refused to exercise supplemental jurisdiction over Nelson's remaining state-law claims. The court concluded

that Nelson did not demonstrate a prima facie case of unlawful retaliation under Title VII because she failed to demonstrate that she suffered an adverse employment action.  Additionally, the court determined that Nelson's defamation claim was barred by the New Jersey statute of limitations.  N.J. Stat. Ann. § 2A:14-3 (West 1987).

Nelson has appealed from the order of June 24, 1990. The district court had subject matter jurisdiction pursuant to 42 U.S.C. § 2000e-5(f) and 28 U.S.C. § 1331, and we have jurisdiction pursuant to 28 U.S.C. § 1291.

## II.  STANDARD OF REVIEW

When considering an appeal from the grant of summary judgment, we exercise plenary review.  See Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co., 998 F.2d 1224, 1230 (3d Cir.), cert. denied, 114 S.Ct. 554 (1993).  Therefore we must determine whether the pleadings, depositions, answers to interrogatories, admissions, and affidavits demonstrate that there is no genuine issue of material fact and that Upsala is entitled to judgment as a matter of law.  See Allegheny Int'l, Inc. v. Allegheny Ludlum Steel Corp., 40 F.3d 1416, 1423 (3d Cir. 1994).

## III.  ANALYSIS

### A.  Nelson's Unlawful Retaliation Claim

#### 1.  The "Pre-Approval" Requirement

Nelson argues that Upsala's requirement for prior approval for her to visit the campus was an unlawful retaliation for the first charge she filed with the EEOC.  She then contends that the district court erred in ruling that she failed to make out a prima facie case of retaliation on the basis of its conclusions that she did not demonstrate that she suffered an "adverse employment action," which the court defined as "any action which already has impaired or which might impair the employee in future employment situations."  Nelson maintains that she can establish a retaliation case without demonstrating that she suffered an adverse employment action as defined by the district court.  She contends that actionable retaliation includes all conduct that "arises out of or is related to the employment relation."  Thus, in her view, the conduct need not impair an "employment situation."  Brief at 11.

Upsala counters that the requirement that Nelson receive prior approval for campus visits does not constitute an adverse employment action within section 704 and that a plaintiff must suffer an adverse employment action to establish a successful retaliation case.  Moreover, Upsala asserts that Nelson failed to produce evidence demonstrating that there was a causal connection between her filing of the original EEOC charge and the alleged retaliation.

> Section 704(a) of Title VII provides in pertinent part:
> It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has made a charge, testified, assisted, or

>                    participated in any manner in an
>                    investigation, proceeding, or
>                    hearing under this subchapter.

42 U.S.C. § 2000e-3(a).

To establish discriminatory retaliation under Title VII, a plaintiff must demonstrate that: (1) she engaged in activity protected by Title VII; (2) the employer took an adverse employment action against her; and (3) there was a causal connection between her participation in the protected activity and the adverse employment action. Charlton v. Paramus Bd. of Educ., 25 F.3d 194, 201 (3d Cir.), cert. denied, 115 S.Ct. 590 (1994); Weiss v. Parker Hannifan Corp., 747 F. Supp. 1118, 1128 (D.N.J. 1990); see also Robinson v. Southeastern Pa. Transp. Auth., 982 F.2d 892, 895 n.1 (3d Cir. 1993). Nelson's proofs clearly satisfy the first of the above-named elements, for it is settled that a cause of action exists pursuant to Title VII when an employer has retaliated against an employee for filing a charge with the EEOC. Tomkins v. Public Serv. Elect. & Gas Co., 568 F.2d 1044 (3d Cir. 1977); Fuchilla v. Prockop, 682 F. Supp. 247 (D.N.J. 1987).

The district court, however, held that Upsala did not violate Title VII because Nelson did not present proofs satisfying the second element. In other words, Nelson failed to show that she suffered an adverse employment action. Accordingly, the court ruled that Nelson failed to demonstrate a prima facie case of unlawful retaliation under Title VII. The court reached this conclusion because (1) Upsala imposed its pre-

approval requirement after Nelson's employment had ended, and (2) Upsala's actions did not affect Nelson's prior or future employment.  Moreover, the court indicated that Upsala did not enforce the requirement even when its representatives saw Nelson on campus.

In support of her contention that she suffered an adverse employment action, Nelson relies on our opinion in Charlton v. Paramus Bd. of Educ., 25 F.3d at 194.  In Charlton, a school teacher who claimed that she was terminated from her employment because of sexual discrimination filed a Title VII action in the district court.  Subsequently, the school board initiated proceedings to have her state teaching certificate revoked.  The teacher then advanced a retaliation claim alleging that the board initiated the revocation proceeding in response to her original Title VII complaint.  The district court dismissed the retaliation claim, ruling that the teacher was not an "employee" at the time the board initiated the revocation proceedings.  Consequently, it held that she was not entitled to protection under section 704.  Charlton, 25 F.3d at 197.

On appeal, we reversed the district court and determined that a former employee may sue for retaliation under Title VII.  In doing so we stated in pertinent part:

> [A]n ex-employee may file a
> retaliation action against a
> previous employer for retaliatory
> conduct occurring after the end of
> the employment relationship when
> the retaliatory act is in reprisal
> for a protected act within the
> meaning of section 704 and arises

> out of or is related to the
> employment relationship.

Id. at 200.  Nelson relies on this holding to support her assertion that she suffered an adverse employment action.

Nelson, however, misconstrues Charlton.  That case does not hold that all post-employment activity of an employer aimed at a former employee in response to her having brought or participated in a Title VII proceeding is actionable under section 704.  Rather, Charlton simply holds that a former employee has standing to bring a retaliation suit under section 704.[3]  Thus, Nelson is incorrect when she asserts that Charlton "in sweeping terms" prohibited all retaliation "which 'arises out of or is related to the employment relationship.'"  Brief at 18.  Indeed, if anything, Charlton suggests that post-employment conduct, to give rise to a retaliation complaint, must relate to an employment relationship.  Charlton makes this implication by indicating that "courts . . . have extended anti-retaliation protection . . . where the retaliation results in discharge from a later job, a refusal to hire the plaintiff, or other professional or occupational harm."  Charlton, 25 F.3d at 200.  But as Charlton is not conclusive on this point we look beyond

---

[3].  Charlton holds that there should be a two-step analysis to determine whether an allegation of post-employment retaliation is actionable under section 704.  Such an analysis inquires whether the post-employment retaliatory conduct is (1) in reprisal for a protected activity and (2) arises out of or is related to the employment relationship.  Charlton, 25 F.3d at 200.

that case to determine the type of an employer's post-employment conduct prohibited under Title VII.[4]

The Supreme Court has stated that "[t]he objective of Congress in the enactment of Title VII . . . was to achieve equality of employment opportunities . . . ." Griggs v. Duke Power Co., 401 U.S. 424, 429, 91 S.Ct. 849, 853 (1971). See Shehadeh v. Chesapeake and Potomac Tel. Co., 595 F.2d 711, 721 (D.C. Cir. 1978). Therefore, for Title VII protections to apply, there should be some connection between the allegedly retaliatory conduct and an employment relationship. Although "[t]he connection with employment need not necessarily be direct,"[5] it does not further the purpose of Title VII to apply section 704 to conduct unrelated to an employment relationship. As the court indicated in Reed v. Shepard, 939 F.2d 484, 493 (7th Cir. 1991),

---

[4]. In her brief Nelson sets forth that she "believes that the actions taken against her have had adverse employment consequences in the sense the district court meant." She indicates that she did not develop the facts along these lines as Upsala did not seek summary judgment on the basis on which the district court granted it. Thus, she contends that the district court "erred in failing to provide [her with] an opportunity to address the facts suddenly made dispositive by the new rule [the court] fashioned." Brief at 12 n.8.

We reject this contention. While it is true that Upsala filed its brief in the district court on its motion for summary judgment before we decided Charlton and that it contended in the brief that the termination of Nelson's employment in itself barred this action, Upsala also argued that Nelson was not adversely affected by Upsala's conduct. Thus, Nelson had an incentive to demonstrate that Upsala had injured her in employment relationships.

[5]. Lutcher v. Musicians Union Local 47, 633 F.2d 880, 883 (9th Cir. 1980).

section 704 requires that the employee demonstrate some type of "employment impairment that evidences actionable retaliation."

In view of Congress's objective in enacting Title VII, it is not surprising that cases dealing with unlawful retaliation under Title VII typically involve circumstances in which the defendant's conduct has impaired or might impair the plaintiff in employment situations. See Lazic v. University of Pennsylvania, 513 F. Supp. 761, 765, 767-69 (E.D. Pa. 1981) (deletion of positive references from personnel file after EEOC charge filed); Bailey v. USX Corp., 850 F.2d 1506, 1507-08 (11th Cir. 1988) (unfavorable reference for a former employee by former employer after EEOC filed); Rutherford v. American Bank of Commerce, 565 F.2d 1162, 1163-64 (10th Cir. 1977) (potential future employer informed of circumstances of discharge and a letter of reference modified to reflect that the former employee had filed sexual discrimination charges); EEOC v. Cosmair, Inc., 821 F.2d 1085, 1087 (5th Cir. 1987) (discontinuance of severance benefits after EEOC charge filed); Pantchenko v. C.B. Dolge Co., 581 F.2d 1052, 1054 (2d Cir. 1978) (former employer refuses to issue letter of recommendation and made negative and untrue remarks about plaintiff to prospective employer); Sherman v. Burke Contracting, Inc., 891 F.2d 1527, 1529 (11th Cir.) (former employer persuaded subsequent employer to terminate former employee who had filed EEOC charge), cert. denied, 498 U.S. 943, 111 S.Ct. 353 (1990). Furthermore, Charlton itself involved activity which would have impaired the employee in future employment situations inasmuch as

a teacher needs a state certificate to teach in the public schools in New Jersey.[6]

Our reading of section 704 does mean that a former employee will be without a remedy for an employer's significant wrongful post-employment conduct not touching an employment relationship. For instance, if an employer physically assaults a former employee or burns down her house in retaliation for the employee having brought a Title VII charge, relief might not be available under section 704. However, in such cases the former employee could assert a state-law damage claim.[7] In fact, Nelson's defamation claims are an example of a former employee seeking relief in a common law action for conduct which the employee herself characterizes as retaliatory. Thus, if Freyberger really defamed her she does not need a section 704(a) retaliation action to obtain relief.

---

[6]. Thus, in Charlton we indicated that the school board's act of pursuing decertification amounted to an adverse employment action because the board attempted to influence the administrative process "to the detriment of Charlton's employment opportunities." Charlton, 25 F.3d at 201. Accordingly, Charlton also supports the view that an adverse employment action involves some harm to an employee's employment opportunities.

[7]. See, e.g., Reed v. Shepard, 939 F.2d 484, 492-93 (7th Cir. 1991) (reviewing plaintiff's allegations that her former employer physically attacked, shot at, and threatened her). We recognize that it might be argued that it is necessary to permit retaliation claims for actions unrelated to an employment relationship so that employees are not discouraged from bringing Title VII claims or assisting in their prosecution. We believe, however, that the possibility that the denial of a retaliation claim for conduct not related to an employment relationship will discourage Title VII activity is slight because serious retaliatory conduct unrelated to an employment relationship will be actionable under state law.

Our holding is consistent with the language of section 704 as that section interdicts "an unlawful employment practice" rather than conduct in general which the former employee finds objectionable. The words "employment practice" suggest that the retaliatory conduct must relate to an employment relationship. Upsala's pre-approval requirement was not an "employment practice" inasmuch as Nelson was not Upsala's employee when the requirement was imposed and the requirement had no impact on Nelson's actual or proposed employment anywhere else.

Nelson cites Passer v. American Chem. Soc'y, 935 F.2d 322 (D.C. Cir. 1991), and Baker v. Summit Unlimited, Inc., 855 F. Supp. 375 (N.D. Ga. 1994), in support of her position. But these cases do not help her. In Passer the court ruled that under the retaliation provision contained in the Age Discrimination in Employment Act, 29 U.S.C. § 623(d), the cancellation of an honorary symposium in retaliation for the filing of an EEOC charge was not only humiliating, but also would hamper the plaintiff in procuring future employment. Passer, 935 F.2d at 331. Thus, a cause of action for retaliation was appropriate. Therefore, Passer supports a holding that an adverse employment action within section 704 requires a harm which impedes plaintiff's employment situation.

In Baker, the district court ruled that an employer's denial of access to its child care center to the plaintiff was an adverse employment action. The plaintiff, a former employee of the defendant, apparently was employed by parents to pick up children at the defendant's premises. Central to the district

court's decision was the fact "that the refusal to allow [p]laintiff to pick up children in the same manner as other parents may constitute an adverse employment action since it <u>may impact on her ability to perform this service and thereby decrease her income correspondingly</u>." <u>Baker</u>, 855 F. Supp. at 377 (emphasis supplied). This language is consistent with the long line of cases suggesting that the challenged conduct in a section 704(a) retaliation case must affect the plaintiff's employment situation.

In view of the foregoing analysis, we hold that the district court correctly concluded that Upsala's requirement that Nelson obtain its approval before entering its campus could not give rise to a retaliation claim as the requirement had no impact on any employment relationship that Nelson had, or might have in the future. Thus, we will affirm the order for summary judgment on the section 704 retaliation claim to the extent Nelson based the claim on the pre-approval requirement.

### 2. Defamatory Remarks

Nelson next contends that two allegedly defamatory remarks by Freyberger constitute an adverse employment action. The first was in December 1990 when Freyberger received a petty cash voucher which Nelson submitted but which a student delivered. The following conversation, which Nelson characterizes as the first defamatory publication, followed the submission of the voucher:

.                            .                            .

        FREYBERGER:  What do you want from me?

        STUDENT:  Well they won't take [the voucher]
        at the business office.

        FREYBERGER:  First of all, I am no longer
        responsible for the gospel choir.  And,
        second of all, when somebody signs [the
        voucher] as recommended, . . . if they are
        not entitled to sign, it is tantamount to
        stealing from the college.

Appellant's app. at 98 (emphasis added).

        The second remark, an alleged republication of the
above emphasized language, occurred in early 1993 after this
action was filed.  Nelson contends that Freyberger discussed the
allegations contained in her complaint with his staff, thereby
republishing the allegedly defamatory remarks.[8]

---

[8]. Freyberger summarized the circumstances of the republication
in an affidavit:

        Sometime subsequent to the commencement of
        this lawsuit by plaintiff, in connection with
        preparation for and scheduling my deposition,
        I discussed plaintiff's allegation in her
        complaint with my secretary, Beth Smucker.
        In connection with preparing for my
        deposition, I also had to review documents,
        including petty cash vouchers, and
        information maintained in the offices of
        Director of College Center Craig Allard and
        (former Chaplain now) Dean of Residents
        Charles Leonard.  I advised them that I was
        accused of calling the plaintiff a thief but
        denied I did so.  I may have told one or more
        of them that what I actually stated was what
        I set forth in paragraph [four of my
        affidavit], i.e. that her act was tantamount
        to stealing from another College budget to
        benefit the Choir.

Appellee's app. at 23.

The district court rejected Nelson's claim that Freyberger's remarks gave rise to an actionable claim for unlawful retaliation under Title VII. In doing so, the court noted that Nelson failed to offer any evidence that these remarks had any adverse effect on her future employment. We agree with the conclusion of the district court and, in view of our earlier discussion, we need not consider this claim further.

## B. Nelson's Supplemental State-Law Claims

Nelson pleaded a number of claims under New Jersey law but the district court in the exercise of its discretion under 28 U.S.C. § 1367(c) declined to exercise jurisdiction over most of them. The court did consider one of Nelson's defamation claims but granted Upsala summary judgment on it because the action was barred by the statute of limitations. The record, however, indicates that the parties entered into a stipulation providing that although the first publication apparently was time barred, the claim predicated on Freyberger's republication was timely. The district court may not have been aware of this stipulation as it seems only to have considered Freyberger's original remarks. Upsala argues that we nevertheless should affirm the summary judgment on the defamation claims on the merits.[9]

We decline to consider the defamation claims. The district court seems to have exercised supplemental jurisdiction

_____

[9]. We probably could affirm the summary judgment on the first publication but because Upsala does not distinguish between the two publications in its argument that we should affirm on the merits we will not do so.

over the defamation claim arising from the first remark because the proper disposition of the claim appeared rather obvious. Indeed, the court disposed of the claim in a short paragraph in its opinion. Now, however, Upsala urges that we affirm the summary judgment on more complex grounds. While Upsala's substantive contentions might be correct, we conclude that there is no reason for the exercise of supplemental jurisdiction in this case as summary judgment is being granted on the federal claim.[10]

## IV. CONCLUSION

For the aforementioned reasons, we will affirm the district court's order of summary judgment of June 24, 1994, on the unlawful retaliation claim arising under Title VII. However, we will vacate the summary judgment on the defamation claim and will remand the case to the district court to dismiss that claim without prejudice. Finally, we will affirm the order of the district court declining to exercise jurisdiction over the remaining state law claims.

---

[10]. Nelson urges us to reverse the district court's order declining to exercise supplemental jurisdiction over the remaining state-law claims if we reverse the summary judgment on the retaliation claim. This point is now moot.