955 A.2d 930 (2008)
402 N.J. Super. 529
Fernando ROA Liliana Roa, husband and wife, Plaintiffs-Appellants,
v.
LAFE and Marino ROA, Defendants-Respondents.
No. A-2588-06T3
Superior Court of New Jersey, Appellate Division.
Argued April 9, 2008.
Decided July 7, 2008.
*932 Louis A. Zayas, Hackensack, argued the cause for appellants.
Dena E. Epstein, Morristown, argued the cause for respondents LAFE and Marino Roa (Jackson Lewis, LLP, attorneys; Ms. Epstein, on the brief).
Before Judges AXELRAD, PAYNE and MESSANO.
The opinion of the court was delivered by
MESSANO, J.A.D.
Plaintiffs Fernando Roa and Liliana Roa, husband and wife, appeal from the November 17, 2006, order that dismissed their complaint with prejudice finding it to be time-barred.[1] Plaintiffs contend that the motion judge erred 1) by determining that defendants' alleged post-termination retaliatory conduct was not part of a continuing violation or otherwise actionable *933 under the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 to -49 (LAD); and 2) by failing to equitably toll the expiration of the statute of limitations because of defendants' alleged failure to post statutorily-required notices in the workplace. We have considered these contentions in light of the record and applicable legal standards. We affirm the dismissal of Liliana's complaint with prejudice in its entirety; we reverse the dismissal of Fernando's complaint and remand the matter to the trial court for further proceedings consistent with this opinion. In doing so, we express no opinion about the ultimate merits of Fernando's complaint, concluding only that at this juncture in the litigation, its dismissal as untimely was inappropriate.

I.
Because defendants' motion was granted prior to their filing of an answer and before discovery, we recount the facts as alleged in plaintiffs' complaint and the certifications that accompanied the motion and opposition. On November 3, 2005, plaintiffs filed a four count complaint against their former employer, defendant LAFE,[2] a New Jersey corporation that distributes "Hispanic food products," and its vice-president Marino. Plaintiffs claimed that Marino was involved in two extramarital affairs with employees of LAFE, and when his wife discovered this, on or near February 14, 2003, Marino attempted to shift blame from himself to Fernando by claiming that Fernando was actually the one involved in the trysts. Plaintiffs alleged that Fernando initially felt pressure to go along with this ruse because Marino was his supervisor, but he ultimately decided not to cooperate and confirmed Marino's affairs to Marino's wife. Plaintiffs alleged that as a result, Marino began a campaign of harassment against them. When Fernando told LAFE's president that Marino was engaging in sexual harassment of company employees, he was rebuffed. Plaintiffs alleged that they were both ultimately terminated by LAFE in retaliation for making the complaint regarding Marino's conduct.
Plaintiffs' complaint sought compensatory and punitive damages, as well as attorney's fees and costs 1) against LAFE and Marino based upon a violation of the LAD (count one); 2) against Marino on the theory that he aided and abetted LAFE in violating the LAD (count two); 3) against both defendants alleging that plaintiffs' termination violated public policy (count three); and against LAFE for its negligent supervision of Marino (count four).
On June 7, 2006, defendants filed a motion to dismiss the complaint pursuant to Rule 4:6-2 asserting that plaintiffs' claims were time-barred; plaintiffs opposed the motion, defendants filed a reply to plaintiffs' opposition and plaintiffs filed a surreply on August 11, 2006, that, among other things, contained a request that the court grant plaintiffs leave to amend the complaint.[3]
Defendants' motion was supported by documents outside the pleadings, thus requiring the motion judge to apply summary judgment standards to consideration of the record. See R. 4:6-2 (requiring "[i]f *934 ... matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided by R. 4:46"). In particular, defendants attached two notices from the Department of Labor that indicated Liliana's last date of employment with LAFE was August 24, 2003, and Fernando's was October 12, 2003.
Defendants argued, therefore, that plaintiffs' LAD complaint was time-barred having not been filed within two-years of defendant's allegedly discriminatory conduct, i.e., the retaliatory discharge of both plaintiffs. Montells v. Haynes, 133 N.J. 282, 290, 627 A.2d 654 (1993). Defendants further contended that plaintiffs' public policy claims in the third count also must be dismissed because they were preempted by the LAD, see Catalane v. Gilian Instrument Corp., 271 N.J.Super. 476, 638 A.2d 1341, (App.Div.) (concluding that "supplementary common law causes of action may not go to the jury when a statutory remedy under the LAD exists"), certif. denied, 136 N.J. 298, 642 A.2d 1006 (1994), or was otherwise subject to the two-year statute of limitations contained in N.J.S.A. 2A:14-2(a). Lastly, defendants argued plaintiffs' fourth count should be dismissed because it was subject to the exclusivity bar of the workers' compensation statute, N.J.S.A. 34:15-8, or was otherwise barred by the same statute of limitations.
Plaintiffs' opposition was supported by Fernando's affidavit in which he claimed that when Liliana sought unemployment benefits after her termination, defendants "lied" by claiming she had been fired for "misconduct" when, in reality, her discharge was retaliatory. Fernando claimed that "[a]s a result of the false allegations" his wife did not receive her unemployment benefits until February 2004, causing the family financial hardship.
Furthermore, Fernando claimed that his wife had surgery on October 2, 2003, while Fernando was still employed at LAFE. On November 11, 2003, he received a letter from his medical insurance carrier advising that the operation was not covered because his insurance had been terminated by LAFE, effective September 30, 2003. Fernando claimed that defendants wrongfully terminated the insurance as further retaliation against him and his wife. He further alleged that the unpaid debt from the hospital bills adversely affected his credit, was not paid until February 2004 when LAFE took responsibility for paying the bills, and caused him "stress and anxiety."
Plaintiffs argued, therefore, that their complaint was not time-barred because defendants' discriminatory conduct continued post-termination, until November 11, 2004, when Fernando received the letter denying medical benefits, and until February 2004 when Liliana finally received her unemployment benefits. Plaintiffs also contended that the statute of limitations should be tolled because defendants "failed to post the relevant anti-discrimination laws in the workplace or provide [plaintiffs] with an employee manual explaining anti-discrimination laws and their rights thereunder."
Defendants filed their reply brief with supporting certifications. Included therein was defense counsel's certification claiming that on behalf of LAFE she prepared a "notice of termination, severance agreement and release" for Fernando's signature on October 2, 2003. In response, she received a phone call from an attorney, Wilfredo Ortiz, who was representing Fernando, and who engaged in negotiations with her in an attempt to obtain greater severance benefits for Fernando.
The reply also included a certification from Leticia Martin, LAFE's human resources *935 administrator, who certified that on October 27, 2003, a few weeks after Fernando's termination, she "inadvertently submitted an incorrect termination date" to Cigna, the company's health insurance provider. Martin was not directed to do so by anyone, and when she realized the mistake had been made, she contacted Cigna and rectified the problem.
Marino also filed a certification in reply to the opposition filed by plaintiffs. In that, he claimed that LAFE had indeed posted the required LAD poster in Spanish and English at the worksite, and attached a copy of the poster to his certification.
Defendants therefore argued that plaintiffs' complaint was still time-barred because Fernando knew of his potential claims in early October 2003 when he consulted an attorney regarding the severance package LAFE offered to him, and that Liliana's claim was similarly time-barred because she knew on October 21, 2003, when the appeals tribunal reversed the denial of her unemployment benefits, that LAFE's submission to the Department of Labor was the cause of the initial denial. Defendants also argued the statute should not be tolled because the required posters had been displayed at the workplace.
Apparently with the judge's permission, plaintiff filed a sur-reply accompanied by yet another certification from Fernando, in which he certified that the posters were not evident at the workplace, that Ortiz did not handle LAD cases and never advised him of his rights in that regard, and it was only upon retaining his present counsel, on October 15, 2005, that he was made aware of his rights. In his brief, plaintiffs' counsel reiterated the arguments he made earlier in opposition, and requested the opportunity, to amend the complaint if the judge found it insufficient.
Oral argument was held on defendants' motion on September 22, 2006, the judge issued the order under review on November 17, 2006, and followed on November 27, 2006, with an oral opinion explaining his ruling that we discuss below. This appeal ensued.

II.
Although originally framed as a motion to dismiss, the above discussion clearly establishes that there were contested facts presented outside of the pleadings. As a result, the motion was more appropriately considered as one seeking summary judgment. When reviewing a grant of summary judgment, we employ the same standards used by the motion judge. Atlantic Mut. Ins. Co. v. Hillside Bottling Co., Inc., 387 N.J.Super. 224, 230, 903 A.2d 513 (App.Div.), certif. denied, 189 N.J. 104, 912 A.2d 1264 (2006). We first determine whether the moving party has demonstrated there were no genuine disputes as to material facts; we then decide whether the motion judge's application of the law was correct. Id. at 230-31, 903 A.2d 513. We owe no deference to the motion judge's conclusions on issues of law. Id. at 231, 903 A.2d 513 (citing Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378, 658 A.2d 1230 (1995)). In this matter, the judge's decision rested solely upon his interpretation of case law regarding the statute of limitations.

A.
Claims brought under the LAD are subject to a two-year statute of limitations. Montells, supra 133 N.J. at 290, 627 A.2d 654. Since plaintiffs' terminations occurred on August 23, 2003, and October 12, 2003, and since plaintiffs did not file their complaint until November 3, 2005, defendants argued the complaint was time-barred. *936 Plaintiffs, however, advanced two theories to support their contention that the complaint was timely. Specifically, Fernando claimed that defendants retaliated against him by improperly canceling his health insurance, an issue not fully resolved until February 2004 when the hospital debts were paid or otherwise resolved. Liliana argued that the retaliation continued post-termination because defendants opposed her application for unemployment benefits on false grounds, and that was not resolved until January 2004. Plaintiffs, therefore, argued 1) that defendants engaged in a continuing pattern of conduct in violation of the LAD; or 2) that the post-termination acts complained of were themselves acts of prohibited retaliatory conduct that occurred within the statutory timeframe.
The motion judge rejected these arguments. First he found that the termination of each plaintiff was a "definitive discrete act," "[t]he consequences of [which] were permanent and would continue, even in the absence of any alleged acts of continued retaliation." Because "[t]he respective terminations were actionable in their own right," "the continuing violation theory ... d[id] not apply." Second, the judge concluded that the post-termination conduct of defendants "did not directly implicate plaintiff[s'] employment relationship with either a current employer or any proposed employment elsewhere." Relying upon Charlton v. Paramus Bd. of Educ., 25 F.3d 194 (3d Cir.), cert. denied, 513 U.S. 1022, 115 S.Ct. 590, 130 L.Ed.2d 503 (1994), and Nelson v. Upsala College, 51 F.3d 383 (3d Cir.1995), the judge concluded that plaintiffs could not demonstrate any relation between defendants' alleged retaliatory post-termination conduct and "the employment relationship."
The continuing violation doctrine has been judicially-created "as an equitable exception to the statute of limitations" for claims arising under anti-discrimination and civil rights laws. Bolinger v. Bell Atl., 330 N.J.Super. 300, 306, 749 A.2d 857 (App.Div.), certif. denied, 165 N.J. 491, 758 A.2d 650 (2000). "Under [the] doctrine, a plaintiff may pursue a claim for discriminatory conduct if he or she can demonstrate that each asserted act by a defendant is part of a pattern and at least one of those acts occurred within the statutory limitations period." Shepherd v. Hunterdon Developmental Ctr., 174 N.J. 1, 6-7, 803 A.2d 611 (2002). "The doctrine is based on the premise that the conduct becomes tortious and actionable precisely because `of its continuous, cumulative, synergistic nature.'" Bolinger, supra, 330 N.J.Super. at 306, 749 A.2d 857 (quoting Wilson v. Wal-Mart Stores, 158 N.J. 263, 273, 729 A.2d 1006 (1999)). In evaluating whether alleged incidents of discrimination constitute a continuing violation, a court should consider three factors:
(i) subject matter  whether the violations constitute the same type of discrimination; (ii) frequency; and (iii) permanence  whether the nature of the violations should trigger an employee's awareness of the need to assert her rights and whether the consequences of the act would continue even in the absence of a continuing intent to discriminate.
[Bolinger, supra, 330 N.J.Super. at 307, 749 A.2d 857 (citations omitted).]
In Charlton v. Paramus Board of Education, supra, 25 F.3d at 200, the Third Circuit Court of Appeals held that a former employee states a claim "when the retaliatory act [ ] In reprisal ... arises out of or is related to the employment relationship." Subsequently, in Nelson v. Upsala College, supra, 51 F.3d at 385-86, the plaintiff, a former employee of the college, alleged that it retaliated against her after *937 her termination by requiring that she obtain prior approval before entering the campus. The Third Circuit rejected the plaintiff's retaliation claim on the ground that the allegedly retaliatory action "had no impact on any employment relationship that [the plaintiff] had, or might have in the future." Id. at 389.
However, more recently, in Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006), the United States Supreme Court clarified what plaintiffs must demonstrate to prove retaliation claims under Title VII. The Court determined "that the anti-retaliation provision [of Title VII] ... is not limited to discriminatory actions that affect the terms and conditions of employment." Id. at 64, 126 S.Ct. at 2412-13, 165 L.Ed.2d at 357. Rather, "[t]he scope of the anti-retaliation provision [of Title VII] extends beyond workplace-related or employment-related retaliatory acts and harm." Id. at 67, 126 S.Ct. at 2414, 165 L.Ed.2d at 359. With these general principles in mind, we return to the motion record and the conclusions reached by the judge in dismissing plaintiffs' complaint.
First, although the judge concluded that the post-termination actions of defendants could not serve as independent bases for plaintiffs' causes of action under the LAD because they were not related to current or prospective employment, we reach the contrary conclusion.
Like Title VII, the LAD contains both "substantive" provisions and an anti-retaliation provision. See Burlington Northern, supra, 548 U.S. at 62-63, 126 S.Ct. at 2412, 165 L.Ed.2d at 356 (explaining the differences between the import of the two provisions in Title VII). While the former prohibits discriminatory conduct based upon a person's status as a member of a protected class, the latter makes it unlawful for

any person to take reprisals against any person because that person has opposed any practices or acts forbidden under [the LAD] ... or to coerce, intimidate, threaten or interfere with any person in the exercise or enjoyment of, or on account of that person having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by [the LAD].
[N.J.S.A. 10:5-12(d) (emphasis added).]
The "practices or acts forbidden" under the LAD include many things unrelated to one's employment. See, e.g., N.J.S.A. 10:5-12(b) (membership in a labor organization); -12(c)(discriminatory actions of employment agencies); -12(f)(discrimination in public accommodations). Additionally, by its terms, subsection (d) is not limited to one's employer, but rather applies to the conduct of "any person."
Our courts have traditionally looked to federal precedent governing Title VII as a "key source of interpretive authority" in construing the LAD. Lehmann v. Toys `R' Us, Inc., 132 N.J. 587, 600, 626 A.2d 445 (1993). The motion judge concluded that Burlington Northern's broad language was inapplicable to the LAD, noting that the conduct complained of in that case was work-related conduct. However, in support of the general principles we have noted above, the Supreme Court cited with approval two Circuit Court opinions, Rochon v. Gonzales, 438 F.3d 1211 (D.C.Cir. 2006), and Berry v. Stevinson Chevrolet, 74 F.3d 980 (10th Cir.1996). In the former, the court found actionable retaliatory conduct where the employee alleged his employer, the FBI, refused to investigate death threats against him and his wife because of his prior complaint of racial discrimination. Rochon, 438 F.3d at 1213. In the latter, the court found it actionable retaliatory conduct where the defendant filed a false criminal charge against a former *938 employee who complained of racial bias. Berry, 74 F.3d at 984.
We conclude that the Supreme Court's essential holding in Burlington Northern, i.e., that Title VII's anti-retaliation provision creates a distinct cause of action that need not be related to the workplace, applies with equal reasoning to construction of the LAD. This is consistent with both the express language of the LAD, as well as its broad remedial purposes. Gerety v. Atl. City Hilton Casino Resort, 184 N.J. 391, 409, 877 A.2d 1233 (2005).
We also disagree with the motion judge's conclusion that plaintiffs' terminations essentially cut-off the possibility of demonstrating a violation of the LAD that continued after they ceased to be employed by LAFE. We agree with him that each plaintiff's termination created the basis for asserting his or her respective cause of action under the LAD. However, if that was the sole determinative factor in deciding whether the continuing violation theory applied, the doctrine could never apply to make post-termination conduct actionable under the LAD.
Instead, we think the focus should be on whether the alleged "continuing violation" that occurs within the statutory time period is conduct that could potentially violate the LAD, as distinguished from the "continuing effect of a prior violation." Alliance for Disabled In Action, Inc. v. Renaissance Enterprises, Inc., 371 N.J.Super. 409, 422, 853 A.2d 334 (App. Div.2004), aff'd sub. nom. Alliance for Disabled in Action, Inc. v. Cont'l Props., 185 N.J. 331, 885 A.2d 952 (2005). In this case, the actions plaintiffs complain of occurred in close proximity to their termination, were taken by defendants, it is alleged, in retaliation for plaintiff's engaging in LAD-protected activity, and, thus, were violative of the LAD in and of themselves. In theory, the continuing violation doctrine could apply.
Having conducted this analysis in a general sense, we nevertheless conclude that when applied to the facts in this case, Liliana's complaint was properly dismissed. Although she contends to the contrary, it is clear and inescapable that as of October 2003 she had received notification from the appeals tribunal that her application for unemployment benefits had originally been denied because of defendants' allegation that she was terminated because of "misconduct." The ultimate resolution of her administrative appeal resulting in the receipt of her benefits in February 2004 is irrelevant because any alleged retaliatory conduct by defendants had long since taken place, and plaintiff knew of it.
As to Fernando, however, we reach a different result. He alleges that he did not know about the post-termination retaliatory conduct, i.e., the termination of his medical benefits retroactively to September 30, 2003, until Cigna refused to pay the claim for his wife's operation sometime around November 12, 2003. Therefore, assuming he did not know, or could not have reasonably known, about the cancellation at an earlier date, this conduct might be sufficient to allow his claim to be deemed timely, since he filed his complaint on November 3, 2005.[4]
No discovery has taken place and the facts alleged are based upon certifications of witnesses who have not been cross-examined. For example, defendants focus on Martin's certification as proof that the cancellation of Fernando's health insurance *939 was not retaliatory but simply due to inadvertence. But, since consideration of the motion essentially required that plaintiff be accorded the benefit of all favorable evidence and inferences in the record, Martin's certification cannot be dispositive of that issue, and whether plaintiff has any proof that the termination of his insurance was both intentional and unknown to him certainly remains to be seen.
In short, we reverse the dismissal of Fernando's complaint on the basis that it was time-barred. We remand the matter to the trial judge for further proceedings. In doing so, we hasten to add that our opinion should not be interpreted as expressing any view as to plaintiff's ability to withstand further motions directed to the statute of limitations or to the ultimate merits of the cause of action, and defendants are free in the future to pursue the questions left unanswered on this meager record.

B.
Plaintiffs' other contention is that defendants did not inform them of their rights under the LAD through either workplace posters, N.J.S.A. 10:5-12(j), or employee manuals. They argue that as a result, the statute of limitations should be equitably tolled. We find the argument unpersuasive.
Plaintiffs have cited several cases from the various federal circuits recognizing that the failure to post required EEOC notices in the Title VII context equitably tolls the statute of limitations. See e.g. Mercado v. Ritz-Carlton San Juan Hotel, Spa & Casino, 410 F.3d 41, 48 (1st Cir. 2005). However, in Podobnik v. United States Postal Service, 409 F.3d 584, 593 (3d Cir.2005), the Court recognized that the statute will be equitably tolled "only until the aggrieved person seeks out an attorney or acquires actual knowledge of his rights." In a similar vein, we have said that the doctrine of equitable tolling "requires the exercise of reasonable insight and diligence by a person seeking its protection." Villalobos v. Fava, 342 N.J.Super. 38, 52, 775 A.2d 700 (App.Div.), certif. denied, 170 N.J. 210, 785 A.2d 438 (2001).
Here it is undisputed that Fernando sought the advice of an attorney shortly before, or shortly after, he was terminated by LAFE.[5] Although his certifications attempt to raise a material factual dispute regarding the attorney's experience with LAD claims, or his state of knowledge, we can assume, and therefore conclude as a matter of law, that due diligence on Fernando's part would have required that he explain to the attorney any suspicions he may have had regarding why he and his wife were terminated. Therefore, we reject application of the equitable tolling doctrine in light of the specific facts presented.

III.
Lastly, we agree with defendants that plaintiffs have waived any appeal of the dismissal of the third and fourth counts of their complaint. The issue was not addressed at all in plaintiffs' initial brief. In their reply brief, plaintiffs contend that point three of their brief "relate[d] to [their] aiding and abetting, violations of public policy and negligent supervision claims."
*940 We disagree since point three of plaintiffs' original brief only addressed the issue of equitable tolling of the statute of limitations based on defendants' alleged failure to post the statutorily-required notice of rights under the LAD. Perforce such an argument had no relevance to plaintiffs' common law claims.
Rule 2:6-2(a)(5) requires that an appellant's initial brief include "legal argument..., which shall be divided, under appropriate point headings, ... into as many parts as there are points to be argued." It is well settled that an issue not briefed is deemed waived. Finderne Heights Condominium v. Rabinowitz, 390 N.J.Super. 154, 166, 915 A.2d 16 (App.Div.2007); Pressler, Current N.J. Court Rules, comment 4 on R. 2:6-2 (2008).
Moreover, the waived claims are deficient as a matter of law and time-barred for the reasons urged by defendants, which we cited above.
In sum, we affirm the dismissal of plaintiff Liliana Roa's complaint with prejudice, as well as the dismissal of counts three and four of plaintiff Fernando Roa's complaint; we reverse the dismissal of Fernando Roa's complaint as to count one and two, and remand the matter to the trial court for further proceedings. We do not retain jurisdiction.
NOTES
[1] Although defendants claim that plaintiff's name is correctly spelled "Iliana," to avoid confusion we shall refer to both plaintiffs by the first names used in their complaint, and defendant Marino Roa, Fernando's brother, by his first name and intend no disrespect by this informality.
[2] In their brief, defendants assert that Gonzalez and Tapanes Foods, Inc., is the proper corporate name of LAFE. However, their motion in the trial court did not use this corporate name and a responsive pleading was never filed.
[3] Plaintiffs, however, did not file a cross-motion for leave to amend, nor did they provide a copy of the proposed amended complaint as required by Rule 4:9-1.
[4] Since neither party addressed whether the "discovery rule" applies to LAD cases, we specifically do not express any opinion on the issue. Lopez v. Swyer, 62 N.J. 267, 300 A.2d 563 (1973).
[5] There is confusion in the record as to Fernando's last day of employment with LAFE, however, it is undisputed that he spoke to Ortiz about his termination and proposed severance package within the first week of October 2003.