**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-2593
_____

ERIC MOTTO,
                              Appellant

v.

WAL-MART STORES EAST, LP
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 5-11-cv-02357)

District Judge:  Mary A. McLaughlin
_____

Submitted Under Third Circuit LAR 34.1(a)
April 7, 2014

Before:  HARDIMAN, SLOVITER, and BARRY, *Circuit Judges*

(Filed: April 7, 2014 )
_____

O P I N I O N
_____

Sloviter, *Circuit Judge.*

Eric Motto appeals the District Court's dismissal on summary judgment of his claim that Wal-Mart Stores East, LP, fired him in retaliation for making protected complaints about discrimination and sexual harassment in the workplace, in violation of 42 U.S.C. § 1981. The District Court held that Motto did not establish a *prima facie* case of retaliation because he did not show a causal connection between his complaints and his termination. It also found that even if he could make a *prima facie* case, he did not present evidence from which a reasonable jury could conclude that Wal-Mart's stated non-discriminatory reason for firing Motto, that he threatened another store employee with violence, was pretextual. Motto argues that the short time period of eleven days between his sexual harassment complaint and his termination is sufficient to establish causation. He also argues that disputes as to material facts exist that preclude summary judgment. We will affirm the judgment of the District Court.[1]

## I.

Because we write primarily for the benefit of the parties, and because Motto only appeals his retaliation claim, we will recount only the facts essential to that claim. Motto, who self-identifies as part-Caucasian and part-African American, was employed as an assembler at a Wal-Mart retail store in Temple, Pennsylvania. In this position, he assembled merchandise, answered customer questions, and sometimes assisted customers by carrying merchandise out to their cars. Of relevance to the issues in this case is Wal-

---

[1] The District Court had jurisdiction pursuant to 28 U.S.C. § 1331. This court has jurisdiction over the final order of the District Court pursuant to 28 U.S.C. § 1291.

Mart's Corporate Policy PD-48 (the "Workplace Violence Policy") which states that "threats of violence" is unacceptable and can lead to termination from the company.

In February 2008, Motto requested a change in his shift schedule so that he could rehearse with his band. Unknown to him, the change was not entered in the store's system, but each time the issue arose, Motto was given the time requested. In October 2008, Motto was scheduled to work late because the store was busy, and Motto was late for band rehearsals. As a result, he was released from the band. At a meeting in January 2009 with the new store manager, Robin Olshenske, Motto learned that his earlier scheduling request had not been entered into the store's system. In contrast, the request of a scheduling change by a Caucasian employee had been entered. Two days later, Motto was informed by Olshenske that his schedule request was entered in the system. Motto filed complaints with state and federal agencies, including the charge that Wal-Mart had engaged in impermissible race discrimination by failing to formally adjust his work schedule between April 2008 and January 2009. Neither agency acted affirmatively on Motto's complaints.

Over a period of months in the summer and fall of 2011, Motto engaged in a sexual relationship with the manager of the Temple Wal-Mart's pharmacy department, Anita Marburger. At the time, Motto was living with another employee of the store, Bonita Campbell. Motto alleges that Marburger often groped him at work, advances which he resisted. On October 13, 2011, Marburger and Motto had a confrontation in which Marburger ended the relationship. Motto alleges that as he walked away, Marburger screamed at him and hit him in the back. There was no confirming evidence

3

introduced.  On October 20, 2011, Marburger told Campbell about her relationship with Motto.  Campbell confronted Motto with this information, visibly upset and crying.  Motto then confronted Marburger about the disclosure in the employee locker room. The parties disagree as to what happened next.

Motto contends that he simply "told [Marburger] loudly, you need to stop."  Three other Wal-Mart employees, Alex Cabrera, Linda Balthaser, and Mark DeMiere, witnessed the confrontation in the locker room and, at Wal-Mart's request, wrote statements describing the incident.  Cabrera wrote that Motto pointed at Marburger and said "I am going to get you."  App. at 162a.  Balthaser wrote that Motto said "I am going to get you" and "this is not over."  App. at 160a.  DeMiere, who is assistant manager of the store, wrote that he witnessed Motto "making threatening comments" and say that "he would get her back."  App. at 156a.  To defuse the situation, DeMiere pulled Motto into the office of store manager Daniel Hutton.  At that time, Motto asked to call the police and informed Hutton that Marburger had been sexually harassing him at work.  Officer Scott Geisler arrived at the store and spoke with Motto in the presence of Hutton and DeMiere.  Geisler's police report did not mention the confrontation, or whether Motto made any threatening comments to Marburger.

Hutton investigated the confrontation and reviewed the statements of Cabrera, Balthaser, and DeMiere.  He determined that Motto had made statements that constituted threats of physical harm in violation of Wal-Mart Corporate Policy PD-48 (the "Workplace Violence Policy").  On November 1, 2011, Hutton fired Motto for violating

4

the policy. On the same day, he fired Marburger for the October 13, 2011, incident in which she hit Motto.

II.

Motto filed suit in the District Court, originally claiming that he was discriminated against on account of his race in violation of Title VII of the Civil Rights Act of 1964, the Pennsylvania Human Relations Act, and 42 U.S.C. §1981. Motto referred to his 2009 performance evaluation which he claims Randy Laing, his supervisor, told him was excellent, but which was written up as "meets expectations." Also, included was the allegation that a co-worker used a racially offensive word in his presence.[2] Motto filed an amended complaint shifting his claim to termination in retaliation for lodging complaints of discrimination with Wal-Mart and government authorities. Wal-Mart moved for summary judgment.

The District Court scrupulously reviewed the evidence presented by both parties. Wal-Mart claimed that Motto was terminated as a result of the incident on October 20, 2011, and in accordance with store policy. The District Court agreed.

> "At oral argument, Motto conceded that Wal-Mart's failure to change his shift schedule in its computer system was not a sufficiently adverse employment action to underlie a claim of employment discrimination, and it is, therefore, no longer before the Court."

App. at 12a.

---

[2] Motto did not contest Wal-Mart's answer that a supervisor told him that he need not work with that worker, and the co-worker was fired shortly thereafter.

The District Court also concluded that the other evidence of possible discrimination bore no relationship to the circumstances of Motto's termination in November 2011 because "[a]ll of [those] events took place before Hutton, the person who decided to fire Motto, became store manager and years before that decision was made." *Id*. at 15a. We therefore confine our focus on that decision, which is the basis for Motto's amended complaint. Motto limits his retaliation claim on appeal of the District Court's denial of his summary judgment motion to the altercation with Marburger.

III.

We exercise plenary review over a grant of summary judgment. *See Anderson v. Wachovia Mortg. Corp.*, 621 F.3d 261, 267 (3d Cir. 2010). In our review, we apply the same standard a district court should use. *See Brown v. Kaz, Inc.*, 581 F.3d 175, 179 (3d Cir. 2009); *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994). Summary judgment should only be granted when the record shows that there is no genuine issue as to any material fact, and we must construe the evidence in favor of the non-movant. *See Anderson*, 621 F.3d at 267 (citing *id*. at 762 n.1).

IV.

Claims under 42 U.S.C. § 1981 are generally evaluated under the *McDonnell Douglas* burden-shifting framework. *See Jones v. Sch. Dist. of Phila.*, 198 F.3d 403, 410, 415 (3d Cir. 1999); *see also Anderson*, 621 F.3d at 268. Under this framework, the plaintiff must first establish a *prima facie* case of retaliation, which requires showing that: 1) s/he engaged in protected activity; 2) the employer took an adverse employment action against him or her; and 3) there was a causal connection between the protected activity

6

and the adverse employment action. *See Moore v. City of Phila.*, 461 F.3d 331, 340-41 (3d Cir. 2006) (citing *Nelson v. Upsala Coll.*, 51 F.3d 383, 386 (3d Cir. 1995)). If the plaintiff establishes a *prima facie* case, then the burden shifts to the employer to articulate a legitimate, non-discriminatory, reason for the adverse employment action. *See Jones*, 198 F.3d at 410. If the employer can articulate such a reason, the burden shifts back to the plaintiff to present evidence to show that the employer's stated reason is pretextual. *Id.*

Motto argues that he established a *prima facie* case for retaliation, based on the facts that: 1) he was engaged in a protected activity when he complained to Hutton about Marburger's sexual harassment; 2) he was terminated which is an adverse employment action; and 3) only eleven days elapsed between the complaint and the termination, showing causation.

It is well-established that activity short of a formal letter of complaint to the EEOC, such as "'making complaints to management,'" can constitute protected conduct. *Barber v. CSX Distribution Servs.*, 68 F.3d 694, 702 (3d Cir. 1995) (quoting *Sumner v. United States Postal Serv.*, 899 F.2d 203, 209 (2d Cir. 1990)). Motto's October 20th, 2011, complaint to Hutton, the store manager, about Marburger's sexual harassment was therefore protected activity. Moreover, it is indisputable that Motto's termination was an adverse employment action. *See Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 749 (1998). Therefore, the only element in dispute is whether there exists a causal connection between Motto's complaint and his termination.

The crux of Motto's causation argument on this appeal is that the short time between his complaint about sexual harassment and his discharge, eleven days, is sufficient by itself to show a causal link.[3]  We do not agree.  Taken in its full context, the timing of events in this case is not "'unusually suggestive of retaliatory motive.'" *Shaner v. Synthes*, 204 F.3d 494, 505 (3d Cir. 2000) (quoting *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 503 (3d Cir. 1997)).  Motto only complained to Hutton about Marburger's sexual harassment in the aftermath of the October 20, 2011, incident in the employee locker room, a confrontation that required management to intervene.  The timing was dictated by how long it took Hutton to properly investigate the situation and reach a decision, and so we do not find the eleven-day period unusually suggestive of retaliation.  In situations where the time between the protected activity and the retaliation does not, standing alone, support a finding of causation, there is usually evidence of antagonism or retaliatory animus in the intervening time.  *See Krouse*, 126 F.3d at 503-4.  No such evidence is present here, nor is there any evidence beyond timing to suggest a causal connection between Motto's complaint of sexual harassment and his termination.  Without such evidence, Motto cannot establish a *prima facie* case of retaliation.

---

[3] Both parties raise the issue of the relevance of the Supreme Court's decision in *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517 (2013), which held that a "but-for" causation standard applies to retaliation claims under Title VII.  While it is generally the practice of this court to apply the same standard for retaliation claims under Title VII as to claims under 42 U.S.C. § 1981, see, e.g., *Jones*, 198 F.3d at 410, we need not decide the question now because we find that Motto cannot make the required showing in any case.

Motto argues that there exist material issues of fact that preclude summary judgment. He argues that there is a genuine issue of material fact as to whether Motto's comment that "he would get [Marburger] back" was even a threat. Appellant's Br. at 20. He also contends that DeMiere's statements to Officer Geisler were inconsistent with his written statement to Hutton, and suggests that "DeMiere may have therefore authored a false, conflicting, and contradictory statement regarding [Motto's] conduct . . . ." Appellant's Br. at 21.

The facts relating to what Motto actually said in the locker room, although they are indeed in dispute, are not material. Motto's argument misunderstands the nature of our inquiry. Our task is not to determine whether a reasonable jury could conclude that Motto's statements were not threats of violence and therefore Hutton's decision to terminate Motto was an incorrect application of Wal-Mart's Workplace Violence Policy. Instead, our task is to determine if the evidence can reasonably support an inference that Motto's termination was caused by his engaging in protected activity.

The record is clear that Cabrera, Balthaser, and DeMiere submitted statements to Hutton, alleging that Motto had shouted "I am going to get you" and "this is not over." Even if there is dispute as to the details of what Motto shouted, there is no dispute that he did shout at her and that the statements to that effect were submitted to Hutton who reviewed them. The District Court concluded that the two-year period between Motto's complaints to the agencies and his termination and the seven-month period between Motto's initiation of the present suit and his termination were too long to raise an inference of causation on their own. We agree. And given the content of those

9

statements, a reasonable jury could not conclude that Hutton fired Motto for any reason other than because of what the three witnesses represented that Motto shouted during his altercation with Marburger.

Even if Motto made a *prima facie* case, we note that the disputed facts are not material to the pretext issue. "To discredit the employer's proffered reason . . . the plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent." *Perskie*, 32 F.3d at 765 (citing *Ezold v. Wolf, Block, Schorr and Solis-Cohen*, 983 F.2d 509, 531, 533 (3d Cir. 1992)). It does not matter what a jury might conclude, based on evaluating the credibility of witnesses, that Motto actually said in the locker room. The only question is whether Hutton's stated reason for firing Motto was pretext. The material evidence is the statements he reviewed to make his decision. The content of these statements is not in dispute and therefore does not preclude summary judgment.

## V.

For the foregoing reasons, we hereby affirm the judgment of the District Court dismissing Motto's retaliation claim against Wal-Mart.