IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| JEWEL REDIC, | § | |
| | § | |
| Plaintiff Below, | § | No. 347, 2025 |
| Appellant, | § | |
| | § | |
| | § | Court Below: Superior Court of |
| v. | § | the State of Delaware |
| INTERFAITH COMMUNITY | § | |
| HOUSING OF DELAWARE, INC., | § | C.A. No. N23C-01-197 |
| | § | |
| Defendant Below, | § | |
| Appellee. | § | |
| | § | |
| | § | |

Submitted: February 4, 2026
Decided: April 22, 2026

Before **SEITZ**, Chief Justice; **VALIHURA** and **TRAYNOR,** Justices.

# **ORDER**

This 22nd day of April, 2026, after consideration of the parties' briefs and the record on appeal, it appears to the Court that:

(1)    Appellant Jewel Redic sued his former employer, Appellee Interfaith Community Housing, for workers' compensation discrimination and retaliation. After discovery, the Superior Court granted Interfaith's Motion for Summary Judgment, holding that Redic had failed to establish a *prima facie* case for retaliatory termination. Redic appeals on two grounds. First, he contends that the court erred by concluding that he had not exercised, or attempted to exercise, his rights under Delaware's Workers' Compensation Act before his termination. Second, he posits

that the court "apparently"[1] found no causal connection between the exercise of his rights under the Workers' Compensation Act and his termination. Because we agree with the Superior Court's conclusion that Redic did not exercise or attempt to exercise his rights under the Workers' Compensation Act, we affirm the court's judgment.

(2) Interfaith is a non-profit organization that provides low-income families with a variety of services to guide them toward home ownership, self-sufficiency, and involvement in the community. On April 4, 2022, Interfaith hired Redic to be its new Chief Financial Officer.

(3) Interfaith's offices are located at 613 North Washington Street, in Wilmington, Delaware, a dangerous, high-crime area.

(4) Interfaith maintains a policy under which all new hires are subject to a ninety-day probationary period beginning on the first day of employment. Under this policy, employees are not permitted to possess a key to the building until their probation has concluded.

(5) During his probationary period, Redic arrived at the office each day between 7:00 and 7:30 a.m. Interfaith's office was open from 8:30 a.m. to 4:30 p.m. As a result, Redic waited outside the office each morning until another employee let

---

[1] Opening Br. at 2, 23.

him in. While waiting outside Interfaith's offices, Redic regularly observed open drug transactions nearby.

(6)     During his employment, Redic was supervised by Executive Director Darlene Sample. A series of email exchanges between Sample and Redic during Redic's brief tenure at Interfaith reflects his subpar job performance during the probationary period.[2]

(7)     Redic alleged that, one morning in either May or June, he was caught in an exchange of gunfire while waiting outside of Interfaith's offices. According to Redic, he was forced to take cover to avoid being injured or killed. Redic alleged that this shooting incident traumatized him and that, in its wake he experienced anxiety, panic attacks, and post-traumatic stress syndrome.

(8)     Redic's probationary period ended on July 4, 2022. On August 15, 2022, Sample informed Redic that his 90-day review was forthcoming, but had been delayed by "absences, pressing projects and time constraints."[3]

(9)     Another shooting occurred in mid-August 2022. On August 16, a stray bullet killed a WSFS Bank executive driving near Interfaith's offices. Afterward, Interfaith offered all employees the opportunity to speak with a mental health

---

[2] *See* App. to Answering Br. at B15–27 (referring to delays caused by Redic's "unplanned absences" (B17), "unexplained inaccuracies" in Redic's work (B22), and "audit schedules[,] . . . financials and . . . work presented . . . way below the standard (B23)).
[3] App. to Answering Br. at B14.

professional covered by their medical insurance. Sample testified that she did not know whether Redic utilized one of the recommended healthcare professionals and that she was unaware of any mental health problems he was experiencing. Redic, however, contends that he discussed his concerns with Ms. Sample, who agreed to provide him assistance with his mental health struggles.

(10)   Redic finally received his 90-Day Probationary Evaluation form on September 7, 2022, two months after the conclusion of his probationary period.[4] He scored "unsatisfactory" in several categories: "job knowledge," "quality of work," "quantity of work," and "attendance/reliability."[5] He scored "satisfactory" in "initiative/creativity", "relationship with supervisor", and "capacity to develop."[6] Finally, he scored "good" in only one category—"cooperation with others".[7]

(11)   On October 13, 2022, Redic's employment at Interfaith was terminated via a hand-delivered letter. The letter stated:

> As discussed during various meetings and coaching support sessions, your displayed skill set does not align with the needs of your position nor meet the standards necessary to be successful in other full-time roles. You were provided ample time to assume the lead role in your department and to date have demonstrated that you do not possess the ability to do so.[8]

---

[4] App. to Opening Br. at A228–29, A250, A264, A268–69.
[5] *Id.* at A228–29.
[6] *Id.*
[7] *Id.*
[8] *Id.*

(12) During his employment, which lasted approximately six months, Redic was absent from work for 26 and a half days.

(13) On December 14, 2022, two months after his termination from Interfaith, Redic was diagnosed with PTSD.

(14) On January 18, 2023, three months after his termination, Redic filed a Petition to Determine Compensation Due with the Delaware Office of Workers' Compensation. On November 14, 2023, the parties entered into a Stipulation and Order for Commutation with no admission of liability by Interfaith for an alleged work injury suffered by Redic on May 7, 2022. Redic also signed an affidavit acknowledging that

> [i]n exchange for releasing the workers' compensation carrier from the pending and future benefit and medical expense liability outlined above, I am electing a payment of $10,000 . . . I understand that this is a commutation with no admission of liability and the Employer maintains a complete denial of this claim.[9]

(15) On January 25, 2023, Redic initiated this litigation by filing a complaint alleging workers' compensation discrimination and retaliation claims under 19 *Del. C.* § 2365 (the "Complaint"). On February 24, 2025, Interfaith moved for summary judgment seeking dismissal of the entire Complaint. On July 25, 2025, the Superior Court granted Interfaith's motion for summary judgment and dismissed Redic's Complaint in its entirety. Redic appealed.

---

[9] App. to Answering Br. at B34.

(16)   In granting summary judgment, the Superior Court focused on whether Redic had reported an injury:

> While Delaware law may not require a formal petition to invoke the protections of 19 Del. C. § 2365, an employee must report some injury to trigger the employer's reporting requirements because "the mere occurrence of an [event] does not necessitate that an injury resulted." There is no doubt that Redic, and his colleagues, were shaken by the shootings in the immediate vicinity of Interfaith's office. Understandably, Redic sought to avail himself of the counseling opportunities presented by his employer, and he informed his supervisor of the effect of the shootings on his mental health. But the Court does not find that this constitutes reporting an injury. In fact, at that point, Redic himself was unaware of his injury.[10]

The court likewise rejected Redic's claim that Interfaith's "knowledge of employee safety concerns from nearby shootings, and its refusal to give him a key, coupled with its response to his mental health issue[,] reveal[ed] retaliatory animus."[11]  Concluding that "Redic ha[d] failed to establish a *prima facie* case that Interfaith terminated him as a result of his efforts to claim workers' compensation benefits,"[12] the court entered summary judgment in Interfaith's favor, and Redic appealed.

---

[10] Order at 13, *Redic v. Interfaith Comty. Hous. of Del., Inc.*, No. N23C-01-197 (Del. Super. July 25, 2025).
[11] *Id*.
[12] *Id*. at 14.

6

(17)  "We review the Superior Court's decision on a motion for summary judgment *de novo*, applying the same standard as the trial court."[13] "We must determine 'whether the record shows that there is no genuine material issue of fact and the moving party is entitled to judgment as a matter of law.'"[14] If any material facts are in dispute, it is "inappropriate to grant summary judgment and the case should be submitted to the fact finder to determine the disposition of the matter."[15] "[W]e are free to draw our own inferences in making factual determinations and in evaluating the legal significance of evidence because this Court 'is as institutionally competent to discern the existence of factual disputes as is the trial court.'"[16] "The facts of record, including any reasonable hypotheses or inferences to be drawn therefrom, must be viewed in the light most favorable to the non-moving party."[17]

(18)  On appeal, Redic argues that the Superior Court erred when it granted summary judgment in Interfaith's favor because there were genuine disputes of material fact as to whether he asserted his rights under Delaware's Workers' Compensation Act.  Redic argues that the act of reporting his mental health injury

---

[13] *Paul v. Deloitte & Touche, LLP*, 974 A.2d 140, 145 (Del. 2009).

[14] *Id.* at 145 (quoting *Berns v. Doan*, 961 A.2d 506, 510 (Del. 2008)); *see also Williams v. Geier*, 671 A.2d 1368, 1375 (Del. 1996) ("To discharge its appellate function of the trial court's entry of summary judgment, this Court must determine 'whether the record shows that there is no genuine, material issue of fact and the moving party is entitled to judgment as a matter of law.'").

[15] *Paul*, 974 A.2d at 145.

[16] *Williams*, 671 A.2d at 1375 (citing *Arnold v. Soc'y for Sav. Bancorp, Inc.*, 650 A.2d 1270, 1276 (Del. 1994)).

[17] *Id.*

to his employer is an activity protected by 19 *Del. C.* § 2365. Accordingly, Redic contends, it is for the jury to determine whether he actually reported such an injury and whether there existed a causal link between the assertion of his rights and his termination.

(19)    Interfaith contends, by contrast, that simply informing an employer of his mental health struggles did not trigger protections under the Workers' Compensation Act. Interfaith argues that Redic's position would set a "dangerous precedent," forcing employers to continuously monitor employees' mental health for even minor incidents to be considered compensable work injuries.[18]

(20)    "Delaware's Workers' Compensation Act protects employees who request workers' compensation benefits from retaliatory action by their employers."[19] This protection is codified in 19 *Del. C.* § 2365. Section 2365 states, in pertinent part, that "It shall be unlawful for any employer . . . to discharge or to retaliate or discriminate in any manner against an employee as to the employee's employment because such employee *has claimed* or *attempted to claim* workers' compensation benefits from such employer."[20] The record is clear that Redic filed his workers' compensation claim more than four months after his termination.

---

[18] *Id.* at 16–18.
[19] *Gilliss v. Dentsply, LLC*, 116 F.Supp.3d 433, 438 (D. Del. 2015) (citing 19 *Del. C.* § 2365).
[20] 19 *Del. C.* § 2365 (emphasis added).

Accordingly, this appeal turns on whether simply reporting an injury to an employer constitutes an "attempt[] to claim workers' compensation" under § 2365.[21]

(21)    In *Santora v. Red Clay Consolidated School District*, the United States District Court for the District of Delaware confronted a workers' compensation retaliation claim under § 2365.[22] In the absence of any Delaware case law providing a standard for a § 2365 retaliation claim, the federal court accepted the parties' suggestion that it apply the Title VII legal standard for retaliation[23] to the plaintiff's claim.

(22)    Based upon Title VII jurisprudence, the *Santora* court held that, to establish a *prima facie* case for retaliation under § 2365, a plaintiff "must show evidence that[] (1) []he exercised rights under the Workers' Compensation Act; (2) the employer took an adverse employment action against h[im], and (3) there was a causal connection between h[is] exercise of rights and the adverse employment action."[24] If the plaintiff successfully makes a *prima facie* case, the burden shifts to the defendant employer to advance a legitimate, non-retaliatory reason for its

---

[21] 19 *Del. C.* § 2365.
[22] *See Santora v. Red Clay Consol. Sch. Dist.*, 901 F.Supp.2d 482 (D. Del. 2012).
[23] Title VII is a federal statute that, among other things, provides employees with the right to be free from retaliation for opposing improper employment practices.[23] To establish a *prima facie* case of retaliation under Title VII, "a plaintiff must tender evidence that: '(1) []he engaged in activity protected by Title VII; (2) the employer took an adverse employment action against h[im]; and (3) there was a causal connection between her participation in the protected activity and the adverse employment action.'" *Moore v. City of Phila.*, 461 F.3d at 340–41 (quoting *Nelson v. Upsala Coll.*, 51 F.3d 383, 386 (3d Cir. 1995)).
[24] *Santora*, 901 F.Supp.2d at 491.

action.[25] If the defendant does so, the plaintiff must show that the employer's proposed reasoning is false and that retaliation was the true intention behind the adverse action.[26] This test has since been followed by the Superior Court and the federal district court in other cases as the test for analyzing a § 2365 claim, and we follow it here.[27]

(23) The *Santora* test, however, does not define what constitutes a "claim or attempt to claim workers' compensation" under § 2365. Of all the cases that discuss § 2365, a majority involve either the official filing of a workers' compensation claim, other substantial steps to receive compensation, or do not directly address the extent to which a claim was made.[28] Only one case provides significant insight into what constitutes a "claim" for workers' compensation benefits under § 2365—*Gilliss v. Dentsply, LLC*.[29]

---

[25] *Id.*

[26] *Id.*

[27] *See, e.g., Weller v. Morris James*, 2020 WL 2511118, at *2 (Del. Super. Ct. May 14, 2020); *Infante v. Horizon Servs., Inc.*, 2019 WL 1126058, at *2 (Del. Super. Ct. Feb. 18, 2019).

[28] *See Blakeman v. Freedom Rides, Inc.*, 2013 WL 3503165 (D. Del. July 10, 2013).

[29] *Gilliss*, 116 F.Supp.3d 433. There is another case, *Blades v. Mosaic of Delaware*, which briefly addresses the question of what constitutes a claim or attempt to claim workers' compensation in the context of a 12(b)(6) motion. *Blades v. Mosaic of Del.*, 2017 WL 3868238, at *3–4, 7 (D. Del. Aug. 31, 2017). There, the plaintiff made a letter request for a light duty assignment following a work-related injury, but did not formally file a workers' compensation claim. *Id.* at *7. The court subsequently decided that "[f]or purposes of [the] Rule 12(b)(6) motion, the court assume[d], without deciding, that [the plaintiff had met] the first prong to state a retaliation claim under § 2365. *Id.* While this case is illustrative of an alternative by which a party might assert a claim for workers' compensation, it is neither binding, nor does the court actually make a ruling.

10

(24) In *Gilliss v. Dentsply, LLC*, the court—again the federal district court for the District of Delaware—addressed § 2365 in the context of a Rule 12(c) motion.[30] In March 2014, the plaintiff reported back pain to a nurse employed by the defendant.[31] Despite allegations from the plaintiff that she never told the nurse that her condition was work-related, the nurse filled out a workers' compensation claim on the plaintiff's behalf, which was later denied on March 14.[32] On March 24, the defendant's human resources representative spoke with plaintiff by telephone, informing her that her employment was terminated because she had failed to report a work-related injury in a timely manner.[33] After trying—and failing—to meet with the human resources representative in person, the plaintiff filed suit, arguing that the reason given for her termination "was pretextual and that the true reasons were: (1) discrimination against plaintiff on the basis of her disabilities; and (2) retaliation against plaintiff for the exercise of her rights under Delaware's workers' compensation statutes."[34]

(25) Analyzing the plaintiff's retaliation claim, the court determined that the plaintiff failed to state a claim because she failed to allege facts creating a reasonable expectation that she would be able to establish a *prima facie* case of retaliation

---

[30] *Gilliss*, 116 F.Supp.3d at 435.
[31] *Id.*
[32] *Id.*
[33] *Id.*
[34] *Id.*

11

through discovery.[35]  Specifically, the court explained that the plaintiff "did not claim or attempt to claim workers' compensation benefits."[36]  Instead, the nurse completed and submitted the workers' compensation claim, and the plaintiff did not allege that she requested its filing.[37]  Accordingly, "without any *affirmative act* on her part *to exercise her right to request benefits*, plaintiff [could not] establish the first element necessary to state a claim under the [Workers' Compensation Act]."[38]

(26)  *Gilliss* is informative and supports the conclusion that, when considering the validity of a retaliation claim, the court must search for some affirmative exercise of the plaintiff's right to workers' compensation benefits.

(27)  Requiring the affirmative exercise of rights or attempt to exercise rights under the Workers' Compensation Act is consistent with how we have defined a "claim" in other contexts.  In *Zurich American Insurance Company v. Syngenta Crop Protection LLC*, we considered whether a letter threatening future litigation could constitute a "claim for damages" under a claims-made liability policy.[39]  In our analysis, we considered the Superior Court's ruling in *Lamberton v. Travelers Indemnity Company*, which held that:

> The entire concept of the word [claim], when viewed broadly, brings to mind someone who is asserting a right to something in the possession

---

[35] *Id.* at 438.
[36] *Id.*
[37] *Id.*
[38] *Id.* (emphasis added).
[39] *Zurich Am. Ins. Co. v. Syngenta Crop Prot. LLC*, 314 A.3d 665, 667 (Del. 2024).

12

of another. A "claim" is a challenging request, a demand of a right, a calling upon another for something due, a demand for benefits or payment, a privilege to something, a title to something in the possession of another, an assertion or statement, or a demand for payment under an insurance policy upon the happening of a contingency against which the policy is issued.[40]

Examining that language, we noted that "[w]ith the exception of 'an assertion or statement,' all the definitions mentioned by the Superior Court strongly suggest that a claim involves the *assertion of a right* or a *demand for a remedy*."[41]

(28) Reading *Gilliss* and *Zurich* together, we agree with the Superior Court's conclusion that Redic's actions did not constitute a claim or attempt to claim workers' compensation. Redic hangs his appeal on the argument that notifying his employer of an injury alone constitutes an attempt to claim workers' compensation benefits. And indeed the Superior Court's order could be read to suggest that the reporting of an injury is a claim or an attempt to claim workers' compensation benefits within the meaning of § 2365. That is not so, however. Read through the prism of *Gillis* and *Zurich*, a claim, in the context of a § 2365 action, is an affirmative act to assert one's right to workers' compensation benefits. Informing an employer of an injury that is not obviously compensable under the Workers' Compensation Act does not meet this standard. Instead, Redic was required to allege facts and

---

[40] *Id.* at 676.

[41] *Id.* at 676 (emphasis added); *see also id.* at 682 ("[O]ur conclusion [is] that a 'claim for damages' is a demand or request for monetary relief by or on behalf of an identifiable claimant.").

adduce evidence showing that, before Interfaith terminated his employment, he exercised, or took some significant steps to exercise, workers' compensation benefits. Because Redic did not allege such facts or adduce such evidence, he failed to satisfy the first prong of a *prima facie* retaliation claim.

(29) Because Redic failed to demonstrate that he exercised or attempted to exercise his rights under Delaware's Workers' Compensation Act, it necessarily follows that he cannot establish a causal connection between an exercise of his rights under the Workers' Compensation Act and his termination.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court be AFFIRMED.

BY THE COURT:

*/s/ Gary F. Traynor*
Justice

14